### BIJOU IRRIGATION DISTRICT, Plaintiff–Appellant,

v.

The EMPIRE CLUB, a general partnership; Ervin L. Michaelson and John Roth (Lease purchase from Ervin L. Michaelson); Rose Irene Campbell and Stephen Campbell; B.J. Peggram and Francis E. Peggram; Terry Chapman

and Connie Chapman; Charles B. Rumsey; Violet L. Peterson; Lee D. Thompson; Harry Kohler; Robert L. Waltner; Carol J. Waltner; Raymond R. Richardson; Gordon A. Price; Betty B. Price; and all Unknown Parties Who Claim any Interest in the Subject Matter of this Action, Defendants–Appellees.

In the Matter of the Application for WATER RIGHTS OF BIJOU IRRIGATION DISTRICT, IN MORGAN AND WELD COUNTIES.

BIJOU IRRIGATION DISTRICT, Applicant–Appellee/Cross–Appellant,

v.

The EMPIRE CLUB, a general partnership; Ervin L. Michaelson; John Roth; Joe Rumsey; Charles B. Rumsey; Lee D. Thompson; Harry Kohler; Robert L. Waltner; Carol J. Waltner; Raymond R. Richardson; Betty Price; and Gordon Price, Opposers–Appellants/Cross–Appellees,

and

City and County of Denver, acting by and through its Board of Water Commissioners; City of Thornton, Colorado; and Violet L. Peterson, Opposers–Appellees,

and

Alan Berryman, Division Engineer, Water Division 1, Appellee.

Nos. 89SA302, 89SA209.

Supreme Court of Colorado, En Banc.

Jan. 14, 1991.

As Modified on Denial of Rehearing Feb. 4, 1991.

Epperson, McClary, Zorn & McClary, Donald F. McClary, Andrew F. McClary, Fort Morgan, for plaintiff-appellant and applicant-appellee, cross-appellant Bijou Irr. Dist.

Calkins, Kramer, Grimshaw & Harring, Wayne B. Schroeder, Denver, for defendant-appellee and opposer-appellant, cross-appellee The Empire Club.

Dinner, Hellerich and Lazar, Thomas E. Hellerich, Greeley, for defendants-appellees Ervin L. Michaelson, John Roth, Charles B. Rumsey, Lee D. Thompson, Harry Kohler, Robert L. Waltner, Carol J. Waltner, Raymond R. Richardson, Gordon A. Price and Betty B. Price, and all other opposers-appellants, cross-appellees.

Brownstein, Hyatt, Farber & Madden, Wayne F. Forman, Denver, for defendant-appellee Violet L. Peterson.

No appearance for defendants-appellees Rose Irene Campbell and Stephen Campbell, B.J. Peggram and Francis E. Peggram, Terry Chapman and Connie Chapman.

Davis, Graham & Stubbs, Roger L. Freeman, Denver, for amicus curiae Jackson Lake Reservoir and Irr. Co.

Clanahan, Tanner, Downing & Knowlton, John P. Akolt, III, Nancy S. White, Denver, for amicus curiae The Farmers Reservoir and Irr. Co.

Wayne D. Williams, Michael L. Walker, Henry C. Teigen, Anne R. Avery, Casey S. Funk, Mary B. Moore, Denver, for opposer-appellee City and County of Denver.

Anthony L. Martinez, Thornton, for opposer-appellee City of Thornton.

Gale A. Norton, Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Linda E. White, Asst. Atty. Gen., Denver, for appellee.

No appearance for opposer-appellee Violet L. Peterson.

Justice LOHR delivered the Opinion of the Court.

These cases are consolidated for issuance of a single opinion to resolve a dispute over recreational use of Empire Reservoir between Bijou Irrigation District ("District"), the entity organized to administer water appropriated and stored in the reservoir, and private parties who own land underlying the reservoir ("Landowners").

In 1983 the District filed suit against the Landowners in Morgan County District Court for declaratory judgment, and to quiet title, enjoin the Landowners' use of the reservoir, and recover damages for trespass. We refer to this case, no. 89SA302, as the declaratory judgment action. The district court entered judgment in favor of the Landowners on April 23, 1987, holding that the District has an easement for the reservoir but does not have the right to exclusive use of the reservoir for recreational and piscatorial purposes. The district court further held that the Landowners have the right to use the surface of the reservoir in a reasonable manner in common with the District, thus ruling against the District on its injunction and trespass claims. The District appealed the judgment.[1] We affirm in part and reverse in part.

On April 27, 1987, the District filed an application in the District Court for Water Division 1 for a decree changing its water storage rights, originally obtained for the beneficial use of irrigation, to recognize as additional beneficial uses its historical use of water stored in the reservoir for recreational and piscatorial purposes. We refer to this case, no. 89SA209, as the water court action. The water court held that the District has the authority under the laws of this state to "operate, maintain and control the water diverted and stored in 'Empire Reservoir' [under its existing decrees] for recreational and piscatorial purposes." It found that the requested change described uses "necessary and incidental" to the diversion and storage of water for the purpose of irrigation, that the requested change would not result in any enlarged use of the decrees, and that the change would produce no material injury to other appropriators on the South Platte River. Accordingly, the water court entered judgment granting the change of water rights,[2]

---

1. We accepted jurisdiction pursuant to § 13–4–109, 6A C.R.S. (1987), prior to final determination by the Colorado Court of Appeals, based on a certification by that court that the case raises issues of first impression that have significant public interest and involves legal principles of major significance.

2. The water court recognized the same appropriation dates as specified in the original decrees and described the newly decreed uses as follows:

Use of Water:
The use of the waters stored in Empire Reservoir under the hereinabove described decrees for the incidental purpose of recreational and piscatorial purposes. The use of said waters stored under the said described decrees shall be limited to the volume and amounts of those waters as historically stored in said reservoir under said decrees for irrigation purposes, and that this decree shall in no way enlarge the time, method and volumes of water stored under said decrees in accordance

but expressly providing that the decree does not affect "any concurrent non-exclusive right which the underlying land owners may have to make use of the surface of the reservoir, or any part thereof, for recreational or piscatorial purposes." The Landowners appeal the judgment granting the change of water rights, and the District cross-appeals on the issue of concurrent use of the surface of the reservoir by the Landowners. We reverse the judgment granting the change of water rights. The cross-appeal is controlled by our decision in the declaratory judgment action.

The rights and obligations at issue in these cases are those vested in the parties under the statutes and legal instruments governing their relationships. These cases do not present issues concerning any rights that may exist or be created in the public to make use of Empire Reservoir. *See* n. 17, below.

## I.

Empire Reservoir is located in the Colorado counties of Weld and Morgan. It covers almost 2,100 acres and is used as storage for irrigation water by Bijou Irrigation District, which supplies water to approximately 200 farmers in northeastern Colorado for irrigation of approximately 19,000 acres of land. The dams impounding the reservoir water are made of earth and are classified as high hazard dams by the office of the Colorado State Engineer. The District is a municipal corporation organized on April 12, 1905, pursuant to the Irrigation District Law of 1905, §§ 37–41–101 to –160, 15 C.R.S. (1990). The District acquired its interest in that portion of the reservoir site at issue here on May 9, 1907, from the United States of America pursu-

ant to the Act of March 3, 1891, authorizing grants of rights of way for irrigation and now codified at 43 U.S.C. § 946 (1988). The District's right to divert water from the South Platte River and store it in the reservoir for the purpose of irrigation was recognized by judicial decrees setting forth the following amounts and priorities:

(1) Priority No. 24—37,709 acre-feet—appropriation date 5/10/05

(2) Priority No. 79–A—30 feet gauge height—appropriation date 5/18/05

(3) Priority No. 34–R—37,709 acre-feet—appropriation date 12/31/29.

The Landowners own property adjacent to and underlying portions of the reservoir. They derive their titles through patents from the federal government. The Landowners acquired their property with notice of the District's interest and took title subject to that interest. A small portion of the remaining land beneath the reservoir is owned by the District. The balance, making up the majority of the land underlying the reservoir, is owned by the Bureau of Land Management and by the State of Colorado.[3]

Historically, both the District and the Landowners have used the reservoir for recreation. The general public has also used the reservoir to a limited extent for that purpose. Some of the Landowners have sold commercial memberships for recreational use of the reservoir, and the District also has leased rights to private clubs for these purposes. It is the expanding commercial use by the private Landowners that led the District to seek a declaratory judgment recognizing its right to prohibit or control all use of the reservoir by the Landowners.[4]

with the historical practices of said diversions and storage for irrigation purposes.

**3.** On March 7, 1944, the State of Colorado granted a right of way to the District for that part of the reservoir site on state lands in Section 36, Township 4 North, Range 61 West of the 6th Principal Meridian. The District stipulated with the State in the declaratory judgment action that the State owns fee title to all state lands underlying the reservoir and agreed that the relief sought in that action would not adversely affect Colorado's property rights.

**4.** The District adduced testimony at the trial of the declaratory judgment action about problems concerning the impairment of the structural integrity of earth-fill dams that can result from motor vehicle travel on the dams and displacement of concrete, rocks and tires used for riprap on the embankments. The District's evidence suggested, however, that the principal precipitating cause of the litigation was the District's difficulty in obtaining liability insurance. The district court specifically held that the availability of liability insurance was not relevant to the issues presented for resolution.

We first consider the issues presented by the declaratory judgment action and then address those arising from the water court action.

## II.

The Morgan County District Court held that the District's interest in the land underlying the reservoir is an easement. We agree. We do not agree, however, that a right to use the surface of the reservoir by the Landowners follows from that conclusion.

### A.

■ As a preliminary matter we must address the District's assertion that the trial court in the declaratory judgment action lacked jurisdiction to rule on the right to use the surface of water stored in the reservoir because it involves a water matter. Water judges in the district courts "have exclusive jurisdiction of water matters within the division, and no judge other than the one designated as a water judge shall act with respect to water matters in that division." § 37–92–203(1), 15 C.R.S. (1990). "Water matters" include "only those matters which [article 92] and any other law shall specify to be heard by the water judge of the district courts." *Id.* Thus, an action for determination of a water right or a change of water right, each of which concerns the right to use of water, is a water matter within the exclusive jurisdiction of the water judge. *See id.;* § 37–92–302(1), 15 C.R.S. (1990); *Humphrey v. Southwestern Development Co.,* 734 P.2d 637, 640–41 (Colo.1987). An action to determine ownership of a water right, however, is not committed to the exclusive jurisdiction of a water judge but is within the general jurisdiction of the district courts of this state. *Humphrey,* 734 P.2d at 641.

■ The declaratory judgment action does not directly involve either the right to use of water or the ownership of a water right. Instead, it relates to the nature and scope of interests in the land upon which the Empire Reservoir is situated based on the construction of a grant by which the

District acquired its right to build and maintain the reservoir. The construction of instruments of grant or conveyance and the identification of the legal rights transferred and retained pursuant to such instruments are matters traditionally within the jurisdiction of the district courts of this state even when construction of an instrument will have an incidental impact on the use of water on the land. *See, e.g., Navajo Development Co., Inc. v. Sanderson,* 655 P.2d 1374, 1376 (Colo.1982) (action for breach of warranties in a deed conveying water rights brought in district court); *Atchison v. Englewood,* 193 Colo. 367, 370, 568 P.2d 13, 15–16 (1977) (action for reformation of agreement concerning preemptive right to purchase land and water rights brought in district court); *Raber v. Lohr,* 163 Colo. 485, 486, 431 P.2d 770, 771 (1967) (action requiring construction of quit claim deed conveying water right brought in district court); *Gilpin Investment Co. v. Perigo Mines Co.,* 161 Colo. 252, 257, 421 P.2d 477, 478 (1966) (quiet title action over land, mineral rights and water rights brought in district court); *Thompson v. Blanchard,* 116 Colo. 27, 28, 178 P.2d 422, 423 (1947) (action involving title to land, water rights and easement for an irrigation lateral brought in district court). The fact that the legal rights and burdens incident to the various interests in a reservoir site may preclude a particular beneficial use of water at that location does not convert the determination of such rights and burdens into a "water matter." We hold that the Morgan County District Court had jurisdiction to determine the ownership interests in the site for the Empire Reservoir.

### B.

■ The District obtained the right to use the portion of the reservoir site at issue here by a federal grant pursuant to the Act of March 3, 1891, authorizing grants of rights of way for irrigation. The nature and extent of the District's rights to the reservoir site, therefore, must be determined by construction of the grant. The 1891 Act, as amended prior to the grant to

the District in 1907, provided in pertinent part:

> That the right of way through the public lands and reservations of the United States is hereby granted to any canal or ditch company [5] formed for the purpose of irrigation ... to the extent of the ground occupied by the water of any reservoir ... and fifty feet on each side of the marginal limits thereof.[6]

Ch. 561, § 18, 26 Stat. 1101 (1891).[7]

In 1921 the United States Supreme Court, interpreting the 1891 Act, stated in dictum [8] that "[t]he right of way intended by the act was neither a mere easement nor a fee simple absolute, but a limited fee on an implied condition of reverter in the event the grantee ceased to use or retain the land for the purpose indicated in the act." *Kern River Co. v. United States*, 257 U.S. 147, 152, 42 S.Ct. 60, 62, 66 L.Ed. 175 (1921). In support of this conclusion, the Court cited *Rio Grande Western R. Co. v. Stringham*, 239 U.S. 44, 36 S.Ct. 5,

60 L.Ed. 136 (1915), in which essentially identical language in the 1875 Act granting rights of way to railroads [9] was construed as conveying a limited fee.[10] *Kern River*, 257 U.S. at 152, 42 S.Ct. at 62.

In 1942 the United States Supreme Court reconsidered the nature of a railroad grant under the 1875 Act construed in *Stringham* and held that Congress intended to grant only an easement. *Great Northern Railway Co. v. United States*, 315 U.S. 262, 271, 62 S.Ct. 529, 532, 86 L.Ed. 836 (1942). The Court noted that in 1871, in response to public disfavor, Congress discontinued its policy of granting land subsidies to railroads in favor of a grant of a mere "right of passage." 315 U.S. at 275, 62 S.Ct. at 534. The Court declined to follow *Stringham*, which had not considered the legislative history. 315 U.S. at 279, 62 S.Ct. at 536. The Court also found persuasive the fact that subsequent to administrative interpretation of the 1875 Act as providing for grants of easements, Con-

---

5. The provision was amended in 1917 to add "or drainage district" after "canal or ditch company," ch. 184, § 1, 39 Stat. 1197, and in 1926 to substitute "canal ditch company, irrigation or drainage district" for "canal or ditch company or drainage district," ch. 409, 44 Stat. 668.

6. The statute provided for filing of the articles of incorporation of the company and a map of the reservoir with the Secretary of the Interior. Ch. 561, § 18, 26 Stat. 1101 (codified as amended at 43 U.S.C. § 946 (1988)) and § 19, 26 Stat. 1102 (codified as amended at 43 U.S.C. § 947 (1988)). After approval of the map by the Secretary, and notation of such approval on plats in the Secretary's office, "all such lands over which such rights of way shall pass shall be disposed of subject to such right of way." Ch. 561, § 19, 26 Stat. 1102 (codified as amended at 43 U.S.C. § 947 (1988)).

7. Now codified, with amendments, as 43 U.S.C. § 946 (1988). 43 U.S.C. § 946 was repealed in 1976 with respect to public land administered by the Bureau of Land Management and land in the National Forest system. Federal Land Policy and Management Act of 1976, Pub.L. 94–579, § 706(a), 90 Stat. 2793 (codified as 43 U.S.C. §§ 1701–1784 (1988)). The 1976 Act established new guidelines for grants of rights of way and gave the Secretary of the Interior authority to issue grants on BLM land and the Secretary of Agriculture similar authority over National Forest land. Pub.L. 94–579, § 501(a), 90 Stat. 2776 (codified as 43 U.S.C. § 1761 (1988)). The 1976 Act specified, however, that "[n]othing in this

title shall have the effect of terminating any right-of-way ... heretofore issued." Pub.L. 94–579, § 509(a), 90 Stat. 2781 (codified as 43 U.S.C. § 1769 (1988)).

8. The irrigation company in *Kern River* had used the land obtained pursuant to the 1891 Act for the sole purpose of electric power generation. *Kern River*, 257 U.S. at 150, 42 S.Ct. at 61. The Court held that the grant was conditioned on use for the main purpose of irrigation with all other uses subsidiary. *Kern River*, 257 U.S. at 153, 42 S.Ct. at 62. Construction of the condition, *not* the distinction between an easement and a fee, was necessary for that holding.

9. The 1875 Act provides in pertinent part:
> That the right of way through the public lands of the United States is hereby granted to any railroad company ... to the extent of one hundred feet on each side of the central line of said road.

Ch. 152, § 1, 18 Stat. 482.

10. In *Stringham*, the Court stated that a legal interest granted by the 1875 Act "and similar acts is neither a mere easement, nor a fee simple absolute, but a limited fee, made on an implied condition of reverter in the event the company ceases to use or retain the land for the purposes for which it is granted, and carries with it the incidents and remedies usually attending the fee." *Stringham*, 239 U.S. at 47, 36 S.Ct. at 6.

gress indicated approval by "repeat[ing] the language of the Act in granting canal and reservoir companies rights of way by the Act of March 3, 1891," the statute at issue here. 315 U.S. at 275, 62 S.Ct. at 534. Moreover, the Court noted that the 1875 Act provided that upon notation of the location of a right of way on the plats in the local land office, "all such lands *over* which such right of way shall pass shall be disposed of *subject to* such right of way," a reserved right of disposition "wholly inconsistent with the grant of a fee." *Great Northern*, 315 U.S. at 271, 62 S.Ct. at 532 (emphasis added in *Great Northern*). The 1891 Act contains language identical to the quoted provision of the 1875 Act. Act of March 3, 1891, ch. 561, § 19, 26 Stat. 1102 (codified as amended at 43 U.S.C. § 947 (1988)). The Court also observed that the 1875 Act is "subject to the general rule of construction that any ambiguity in a grant is to be resolved favorably to a sovereign grantor." *Great Northern*, 315 U.S. at 272, 62 S.Ct. at 533 (citing *Caldwell v. United States*, 250 U.S. 14, 20–21, 39 S.Ct. 397, 398, 63 L.Ed. 816 (1919)).

We hold that *Great Northern* provides compelling authority for construction of the 1891 Act as authorizing grants of easements, not limited fees. *Great Northern* effectively overruled *Stringham*,[11] the basis for the statement in *Kern* that a limited fee was intended by the 1891 Act. In doing so, it reviewed legislative history not considered by the Court in *Kern*. Importantly, *Great Northern* made specific reference to the 1891 Act as reflecting approval of the administrative interpretation of the 1875 Act as providing for grants of easements. 315 U.S. at 275, 62 S.Ct. at 534; *see, e.g.*, House Report No. 2790, 54th Cong.2d Sess. (1897) (including letter from the Assistant Commissioner of the General Land Office of the Department of the Interior reflecting this administrative interpretation). Additionally, the language of the 1891 Act providing that disposition of lands over which a right of way shall pass shall be subject to the right of way is identical to a provision in the 1891 Act under which the District acquired its rights.[12] Although not controlling, we also find it persuasive that Department of the Interior regulations approved in 1900 (30 L.D. 325) concerning grants pursuant to the Act of 1891 state that "[t]he act is not in the nature of a grant of lands; it does not convey an estate in fee in the right of way." Quoted in *Homer E. Brayton*, 31 L.D. 364, 365 (July 2, 1902); *see also Grindstone Butte Project*, 18 IBLA 16, 19 (Nov. 7, 1974) ("the right-of-way under the Act was in the nature of an easement" (citing *Great Northern*)); *Fred Markle*, 6 IBLA 52, 54 (May 18, 1972) ("Since the decision of the Supreme Court in *Great Northern Railway Co. v. United States*, ... rights-of-way granted under the March 3, 1891, Act have been considered by this Department to be easements rather than limited fees in the land.").[13] Thus, we conclude that the District holds an easement to land underlying the reservoir.[14]

---

**11.** In declining to follow *Stringham* the Court stated that the "conclusion [in *Stringham* ] is inconsistent with the language of the Act, its legislative history, its early administrative interpretation and the construction placed on it by Congress in subsequent legislation. We therefore do not regard it as controlling." *Great Northern*, 315 U.S. at 279, 62 S.Ct. at 536.

**12.** We acknowledge that the 1875 Act construed in *Great Northern* contained a provision not present in the 1891 Act, described as follows in *Great Northern:*

Section 2 adds to the conclusion that the right granted is one of use and occupancy only, rather than the land itself, for it declares that any railroad whose right of way passes through a canyon, pass or defile "shall not prevent any other railroad company from the use and occupancy of the said canyon, pass, or defile, for the purposes of its road, *in common* with the road first located."

315 U.S. at 271, 62 S.Ct. at 532 (emphasis appearing in *Great Northern* ). As we understand *Great Northern*, this provision was supportive of, but not essential to, the Court's decision.

**13.** The Federal Land Policy and Management Act of 1976, which provides authority for new grants of rights of way over public land, expressly defines "right-of-way" to include "easement, lease, permit or license to occupy, use, or traverse [certain] public lands." Pub.L. 94–579, § 103(f), 90 Stat. 2746 (codified as 43 U.S.C. § 1702 (1988)).

**14.** The conclusion that the 1891 Act should be construed to authorize grants of easements rath-

## C.

■ The conclusion that the District holds an easement rather than a limited fee does not end our inquiry. The question remains whether the Landowners' interests in the land include the right to use of the overlying appropriated water for recreational purposes. We hold that they do not.

■ The extent of the Landowners' interests as owners of the servient estate is limited by the scope of the District's rights under its easement. "The owner of the servient estate continues to enjoy all the rights and benefits of proprietorship *consistent with the burden of the easement.*" *Barnard v. Gaumer*, 146 Colo. 409, 412, 361 P.2d 778, 780 (1961) (emphasis added). *See also Osborn & Caywood Ditch Co. v. Green*, 673 P.2d 380, 383 (Colo.App.1983) ("the owner of the land burdened by an easement ... must not unreasonably interfere with the superior right-of-way of the person possessing the easement"); Restatement of Property § 486 (1944) ("The possessor of land subject to an easement created by conveyance is privileged to make such uses of the servient tenement as are not inconsistent with the provisions of the creating conveyance."). The rights of an easement holder are defined by the nature and purpose of the easement. *Barnard v. Gaumer*, 146 Colo. at 412, 361 P.2d at 780. In determining the nature and purpose of the District's easement, we look first to the language of the statute by which it was created.

The 1891 Act provided for grants of rights of way "to any canal or ditch company formed for the purpose of irrigation." Ch. 561, § 18, 26 Stat. 1101. Such rights of way were "for the purpose of irrigation, but not for any other purpose." *Kern River*, 257 U.S. at 151, 42 S.Ct. at 61. In 1898 additional legislation was adopted to provide that such rights of way "may be used for purposes of a public nature; and

said rights of way may be used for purposes of water transportation, for domestic purposes, or for the development of power, as subsidiary to the main purpose of irrigation." Act of May 11, 1898, ch. 292, § 2, 30 Stat. 404. The "main and controlling purpose" is irrigation, and all other uses are subsidiary. *Kern River*, 257 U.S. at 154–55, 42 S.Ct. at 62–63.

■ The scope of the District's rights as defined by the easement's nature and purpose necessarily includes construction and maintenance of the reservoir and storage of water appropriated for irrigation. The critical question is whether the District's right to store water in the reservoir is exclusive of any right by the Landowners to use the reservoir for recreational purposes. We conclude that it is. We acknowledge the familiar principle that "[u]nless the grant conveying an easement specifically characterizes the easement as 'exclusive,' the grantor of the easement retains the right to use the property in common with the grantee." *Bergen Ditch & Reservoir Co. v. Barnes*, 683 P.2d 365, 367 (Colo.App.1984); *accord Barnard v. Gaumer*, 146 Colo. at 412, 361 P.2d at 780. This principle, however, is limited to circumstances in which use of the property by the owner of the servient estate is consistent with the rights of the easement holder. *See Barnard*, 146 Colo. at 412–13, 361 P.2d at 780; *Skidmore v. First Bank of Minneapolis*, 773 P.2d 587, 589 (Colo.App.1988). The holder of the servient estate may not unreasonably interfere with the superior right of the person owning the easement. *Osborn & Caywood Ditch Co.*, 673 P.2d at 383. "Conversely, the owner of the easement, or dominant estate, may do whatever is reasonably necessary to permit full use and enjoyment of the easement." *Id.*

The federal grant of the reservoir easement to the District is not characterized as

---

er than limited fees is consistent as well with Colorado cases holding that the term "right of way" is generally construed to describe an easement. *See Hutson v. Agricultural Ditch & Reservoir Co.*, 723 P.2d 736, 739 (Colo.1986) ("In the absence of additional descriptive language, 'right-of-way,' when used to describe an owner-

ship interest in real property, is traditionally construed to be an easement."); *Lincoln Savings and Loan Association v. State*, 768 P.2d 733, 735 (Colo.App.1988) ("deeds which in the granting clause convey a right-of-way over, across, or upon certain lands devolve a right only, and are generally construed as creating an easement.").

exclusive under the 1891 Act or its pertinent amendments. Therefore, we must determine whether the use of the reservoir by the Landowners for recreational purposes is consistent with the nature and purpose of the grant. The purpose in question is the storage of water for irrigation.

The District uses the reservoir to store water diverted from the South Platte River by exercise of its three storage decrees. Although we have stated that water once diverted becomes the personal property of the appropriator, *Brighton Ditch Co. v. Englewood,* 124 Colo. 366, 373, 237 P.2d 116, 120 (1951), this somewhat overstates the scope of the right.[15] The principle, when applied to appropriation for storage and later application to beneficial use, was more accurately characterized in *Fort Morgan,* where we stated that "[t]he justice of allowing reservoir companies *to control the water which they have diverted* is not to be questioned; but it should be borne in mind that they do not own the water, but have only a right to its use." 71 Colo. at 262, 206 P. at 395 (emphasis added). Thus, in *Fort Morgan* we held that a reservoir company retains no ownership right over in-basin water that seeps from its reservoir. *Id.* The company, however, does have a right to control the water that remains stored in the reservoir.

The practical considerations incident to administration of a reservoir and application of these waters to irrigation use support recognition of the right of the appropriator to control the stored water. In administering water stored in a reservoir to maximize beneficial use, it is sometimes necessary to lower or raise the water level significantly in a short period of time.[16] These rapid fluctuations in water level can create hazards for users of the reservoir. This makes it essential that the reservoir owner have control of use of the reservoir in order to protect the reservoir users. A reservoir owner also is liable for damage caused by waters escaping from a reservoir as the result of negligence. § 37–87–104(1), 15 C.R.S. (1990). It is essential for purposes of public protection and liability control, therefore, that the reservoir owner carefully monitor the condition of the dams, maintain only that amount of water in storage consistent with safety, and assure that the processes of filling and discharging from the reservoir do not create hazards for reservoir users. These considerations undoubtedly provide the rationale for our long established acceptance of the principle set forth in *Fort Morgan,* 71 Colo. at 262, 206 P. at 395, that reservoir companies have the right to control the water that they have diverted. We conclude as a matter of law that use of Empire Reservoir for recreational purposes by owners of the servient estate is inconsistent with the right of the District under its easement to store water over which it has the right of control and would unreasonably interfere with the exercise of that right.[17]

We believe that a reservoir company's long-recognized right to control stored water, based as it is on the practical considerations in administration and safe storage of this water, militates against recognition of a right in the Landowners to make private

---

**15.** *E.g.,* water diverted by exercise of a storage right must ultimately be applied to the beneficial use for which the water was appropriated. *See Handy Ditch Co. v. Greeley & Loveland Irrigation Co.,* 86 Colo. 197, 199, 280 P. 481, 481 (1929). Also, to the extent stored water from in-basin sources escapes through seepage, the appropriator has no right to recapture it. *Fort Morgan Co. Reservoir & Irrigation Co. v. McCune,* 71 Colo. 256, 262, 206 P. 393, 395 (1922).

**16.** In argument to this court, counsel for the District remarked that the water level in Empire Reservoir "goes up and down like mad." The evidence at the trial in the declaratory judgment action was that the reservoir water level varied widely during the cycle of filling the reservoir and discharge to meet irrigation needs.

**17.** In reaching this result, we have relied to a great extent on Colorado cases setting forth general principles of the law of easements. The Landowners have argued that federal law, not state law, should be applied. We have discovered nothing to suggest that any federal law applicable to construing the scope of easements granted under the 1891 Act is at variance with the general principles set forth in our own cases.

recreational use of water stored in Empire Reservoir.[18]

### D.

The Landowners also rely on *People v. Emmert*, 198 Colo. 137, 597 P.2d 1025 (1979), and *Bergen Ditch & Reservoir Co. v. Barnes*, 683 P.2d 365 (Colo.App. 1984), in support of a conclusion that the District's right of way does not exclude their use of the reservoir for recreational purposes. The Landowners' reliance on these cases is misplaced. *Emmert* recognized that land underlying non-navigable streams is subject to private ownership and that persons floating on a raft across that land without permission of the landowner are guilty of criminal trespass. This result followed from the proposition that "the ownership of the bed of a non-navigable stream vests in the owner the exclusive right of control of everything above the stream bed, subject only to constitutional and statutory limitations, restrictions and regulations." 198 Colo. at 141, 597 P.2d at 1027. In the present case, however, the District has the right to control of water that it has diverted from its natural course incident to exercise of its storage rights. *See* Part IIC of this opinion. The rights of the Landowners, holders of the servient estate, are limited to conduct consistent with and not unreasonably interfering with the rights of the District as owner of the dominant estate. The facts of appropriation, diversion from the natural stream and right of control of the stored water distinguish this case from *Emmert*.

In *Bergen Ditch* a landowner had granted a reservoir company an easement over private land to overflow and use that land as part of the reservoir. 683 P.2d at 366. The Colorado Court of Appeals concluded that the landowner's successor held a right in common with the reservoir company to make reasonable use of that part of the surface of the reservoir overlying the land burdened by the easement. 683 P.2d at

366–67. That holding followed from the conclusion that the private easement granted to the reservoir company to flood a portion of the landowner's land was nonexclusive. Furthermore, *Bergen Ditch* limited use by the landowner to reasonable use of only that portion of the reservoir overlying his land. In contrast, we have concluded that the private use of Empire Reservoir is inconsistent with the federal grant of a right of way for irrigation to the District. An evaluation of whether *Bergen Ditch* correctly construed the private easement would require review of the evidentiary record, particularly the instrument by which the easement was granted. That record is not before this court. However, *Bergen Ditch*, based as it is on construction of an instrument granting a private easement, is not necessarily contrary to our holding that the Landowners have no right to recreational use of the water stored in Empire Reservoir pursuant to a federal grant.

The considerations leading to recognition of the right of the District to control stored waters are directly related to assuring that the waters can be safely, effectively and efficiently administered to maximize beneficial use for irrigation purposes, the primary purpose of the federal grant. Accordingly, we hold that the Morgan County District Court erred when it held that the Landowners "have the right to use the surface, in common and in a reasonable manner, with the District."

### E.

The Landowners, however, assert that by acquiescence in their historical use of the reservoir the District is now estopped from seeking relief. The brief answer to this contention is that it was not ruled on by the district court. However, the facts found by the district court do not establish the elements of a claim of estoppel.

**18.** The Landowners are asserting private rights, not public rights, and we have no occasion to determine the nature and extent of any public rights that may exist or be created for use of Empire Reservoir. Moreover, neither the State of Colorado nor the Bureau of Land Management is a party to the declaratory judgment action, and any rights to use of the reservoir that might be asserted by these landowners are not at issue in this case.

We have held that the doctrine of estoppel requires more than mere delay. *Manor Vail Condominium Association v. Vail,* 199 Colo. 62, 64, 604 P.2d 1168, 1170 (1980). Estoppel requires " '(1) full knowledge of the facts; (2) unreasonable delay in the assertion of available remedy; and (3) intervening reliance by and prejudice to another.' " *Id.* (quoting *Herald Company v. Seawell,* 472 F.2d 1081 (10th Cir.1972)). The district court found that the District had knowledge of historical use of the reservoir by the Landowners. The court, however, did not make findings concerning unreasonable delay or prejudice. The findings do indicate increased use and, in particular, increased private commercialization over time—factors important in determining the reasonableness of delay. On this record we can only conclude that the Landowners failed to make the necessary showing to support a claim for estoppel.

### III.

### A.

We next consider the challenges to the decree of the water court granting the District's application for a change of water rights to recognize recreational and piscatorial uses of the stored water by the District. The water court held that the District has sufficient power and authority under Colorado law "to operate, maintain and control" the water diverted and stored in Empire Reservoir under its storage decrees for recreational and piscatorial purposes. The court also found that these uses were necessary and incidental to the primary use of irrigation and that the District has devoted and applied the water stored in Empire Reservoir to such incidental uses from the "date of inception" of the storage decrees. The court found that recreational and piscatorial use would result in no enlarged use and that such incidental uses would not cause material injury to other appropriators on the South Platte River. The decree specifies that it does not enlarge the time, method or volume of storage.

The Landowners and others objected to the District's application for recognition of recreational and piscatorial purposes under its storage decrees. On appeal, they assert that the District, under the doctrine of collateral estoppel, was bound by the Morgan County District Court's conclusions in the declaratory judgment action that (1) the District's authority under Colorado law is limited to administration of stored water for irrigation; and (2) recreational and piscatorial use of the stored water by the District is not within the scope of the subsidiary uses recognized in the 1891 Act. Furthermore, if the District is not precluded by collateral estoppel from obtaining its desired change of water rights, the Landowners challenge the authority of a district organized under the Irrigation Law of 1905 to appropriate and store water for recreational and piscatorial purposes, and assert that the evidence does not support the water court's conclusion that recreational and piscatorial purposes are necessary and incidental uses of the waters stored for irrigation purposes.

A change of water right includes a change in the type of use. § 37–92–103(5), 15 C.R.S. (1990). Implicitly, any such use must be a beneficial use, for appropriation is based on application of waters of the state to beneficial use. § 37–92–103(3)(a), 15 C.R.S. (1990). Impoundment of water "for recreational purposes, including fishery or wildlife" is a beneficial use. § 37–92–103(4), 15 C.R.S. (1990). We believe, however, that unless the owner of a water right can legally put water to a particular new use, the use cannot be recognized as beneficial. *Cf. Colorado River Water Conservation District v. Vidler Tunnel Water Company,* 197 Colo. 413, 594 P.2d 566 (1979) (intent to appropriate cannot be recognized unless the purported appropriator has an intent to apply water to beneficial use itself or legally represents others committed to make such actual beneficial use). In the present case, the District wishes to put the water stored from time to time in Empire Reservoir to private use for recreational and piscatorial purposes. Such a use at that location, however, would exceed the scope of its easement granted by the United States in 1907.

■ The Act of May 11, 1898, listed three specific uses of canal and reservoir rights of way: water transportation, domestic purposes, and development of power, each "subsidiary to the main purpose of irrigation." Ch. 292, § 2, 30 Stat. 404. In addition it authorized rights of way "for purposes of a public nature." Ch. 292, § 2, 30 Stat. 404. This public purposes authorization is also subject to the dominant purpose of irrigation. *Kern River Co.*, 257 U.S. at 153, 42 S.Ct. at 62. The statute makes no provision for a private use other than the ones specifically mentioned. *See* Act of March 3, 1891, ch. 561, § 21, 26 Stat. 1102; [19] *Zelph S. v. Calder*, 16 IBLA 27, 81 I.D. 339, 345 (1974) (Act of May 11, 1898, does not authorize private uses for stock watering or fish culture). Accordingly, for the District to make such uses of the stored water would overburden the easement and would intrude on the rights of the Landowners as owners of the servient estate. Under these circumstances, we believe that the District was precluded from obtaining a change of its water storage rights in Empire Reservoir to recognize the additional and incidental use of the water for recreational and piscatorial purposes. For this reason, we reverse the judgment of the water court recognizing a right in the District to apply the stored water to these uses.[20]

Our disposition of the issue makes it unnecessary to determine whether an irrigation district organized under the Irrigation Law of 1905 has the authority to appropriate water for recreational and piscatorial use incident to an appropriation for the primary purpose of irrigation. It is also unnecessary to determine the merit of the objectors' collateral estoppel contentions or its argument that the evidence does not support the recognition of use of the District's storage right for these incidental purposes.

### B.

The District cross-appealed the judgment in the water court action to challenge the water court's statement that "[n]othing in this decree shall be deemed to [affect] any concurrent non-exclusive right which the underlying land owners may have to make use of the surface of the reservoir, or any part thereof, for recreational or piscatorial purposes." This language does not purport to create any right in the Landowners. Any suggestion that the Landowners may have such rights is inconsistent with our holding in the portion of this opinion relating to the declaratory judgment action, and we disapprove any such suggestion.

### IV.

We affirm the judgment of the Morgan County District Court in the declaratory

19. The cited statute, as now codified at 43 U.S.C. § 949 (1988), provides:

Nothing in sections 946 to 949 of this title shall authorize such canal or ditch company to occupy such right of way except for the purpose of said canal or ditch, and then only so far as may be necessary for the construction, maintenance, and care of said canal or ditch.

This provision has been construed to apply to reservoirs as well as canals and ditches. *Zelph S. v. Calder*, 16 IBLA 27, 81 I.D. 339, 345 (1974).

20. No challenge has been raised to the standing of the Landowners to object to the District's application for change of water rights. The Landowners do not assert injury to any water rights of their own. *See* § 37–92–305(3), 15 C.R.S. (1990) (an application for a change of water right shall be approved "if such change ... will not injuriously affect the owner of or persons entitled to use water under a vested water right or a decreed conditional water

right."). Where, as here, objectors such as the Landowners assert that the owner of the water right cannot make the requested uses without impermissibly burdening the objector's own legal rights, we conclude that general principles of standing authorize the objectors to raise that limited challenge to the application. *See Wimberly v. Ettenberg*, 194 Colo. 163, 168, 570 P.2d 535, 539 (1977) (standing requires injury in fact to a legally protected interest); *accord, e.g., Maurer v. Young Life*, 779 P.2d 1317, 1323 (Colo. 1989); *O'Bryant v. Public Utilities Commission*, 778 P.2d 648, 652–53 (Colo.1989). We also conclude that the issue was adequately presented to the water court by introduction of the Morgan County District Court's judgment in the declaratory judgment action in which the court noted that to declare that the District has exclusive authority to use Empire Reservoir for recreational and piscatorial purposes "appears contrary to the subsidiary use recognized in 43 U.S.C. § 951 [codifying relevant provisions of the Act of May 11, 1898]."

judgment action to the extent that it holds that the District owns an easement rather than a limited fee for the operation and maintenance of Empire Reservoir. We reverse the judgment of that court to the extent that it holds that either the District or the Landowners have rights to make private use of the stored water for recreational and piscatorial purposes. We remand the declaratory judgment action to the district court for entry of a decree consistent with the views expressed in this opinion.

We reverse the judgment of the water court granting a change of water rights to recognize a right in the District to make incidental use of its storage decrees for recreational and piscatorial purposes.