**BIJOU IRRIGATION DISTRICT,
Petitioner–Appellant,**

v.

**Douglas K. BARNETT, Respondent–
Appellee.**

**No. 91SA385.**

Supreme Court of Colorado,
En Banc.

July 13, 1992.

Epperson, McClary, Zorn & McClary,
Donald F. McClary, Andrew F. McClary,
Fort Morgan, for petitioner-appellant.

Respondent-appellee not appearing.

Justice ERICKSON delivered the
Opinion of the Court.

This appeal is from an order of the Morgan County District Court that was entered after a hearing on a contempt citation issued to Douglas K. Barnett (Barnett). Barnett owned land contiguous to and underlying the Empire Reservoir. Following our decision in *Bijou Irrigation District v. Empire Club* (*Bijou* ), 804 P.2d 175 (Colo. 1991), and the entry of an amended judgment and decree by the district court to comply with *Bijou,* Barnett sold permits to drive across his land to gain access to Bureau of Land Management (BLM) land and the Empire Reservoir.

At the conclusion of a contempt proceeding against Barnett, the district court found Barnett in contempt for permitting swimmers and boaters to gain access to the Empire Reservoir from his land, but held that Barnett was not in contempt for selling permits to cross his land to reach the BLM Land and the Empire Reservoir that was adjacent to the BLM property.

The Bijou Irrigation District has appealed, contending that the district court erred in not finding Barnett in contempt for selling permits and in not awarding the District attorney fees for obtaining and prosecuting Barnett for contempt. After the district court entered its order in the contempt proceedings, Barnett filed a notice of intent not to participate in the appellate proceeding. We affirm the district court for the reasons set forth in this opinion.

I

The Bijou Irrigation District (District) was organized to administer the water appropriated and stored in the Empire Reservoir. The District filed a petition in the water court to change its water and storage rights to include piscatorial and recreational uses. The landowners who own land underlying and adjacent to the Empire Reservoir also claimed the right to use the Empire Reservoir for recreational purposes and filed a declaratory judgment action in the district court to determine their rights to use the surface waters of the Empire Reservoir for piscatorial and recreational

use. After the declaratory judgment from the district court and the proceedings to change water storage rights in the water court were consolidated in an appeal to this court, we resolved the conflict and defined the rights of the District and the landowners in the *Bijou* decision.

Following our decision in *Bijou* the Morgan County District Court entered an amended judgment and decree which provided in pertinent part:

## I. FINDINGS OF FACT

On April 23, 1987, this Court entered its Judgment and Decree in Case No. 83–CV–132, ordering and declaring that the Plaintiff, the Bijou Irrigation District ("District"), possesses only an easement by grant from the United States for the storage of water in the Empire Reservoir. The Court ruled that this District does not have the right of exclusive use of the Reservoir for recreational and piscatorial purposes and that the defendants, who own lands abutting and underlying the Reservoir, have the right to use the Reservoir, in common and in a reasonable manner, with the District.

On appeal of that Judgment and Order, the Colorado Supreme Court, in a consolidated opinion ... affirmed this Court's ruling that the District holds only an easement to store water in and operate the Empire Reservoir. However, the Supreme Court reversed that portion of this Court's ruling that the defendants (hereinafter, "Landowners") could use the surface of the Reservoir for recreation. The Supreme Court ruled that the District held an exclusive easement which precluded the use of the surface of the water by the Landowners for recreational and piscatorial purposes. The Supreme Court also held that the District was precluded from obtaining a change of its water storage rights in the Empire Reservoir to include recreational and piscatorial purposes, because those uses were not authorized by the statute under which the Reservoir easement was granted....

. . . .

## II. JUDGMENT AND DECREE

The Court orders, adjudges, declares and decrees the following:

1. The District possesses an exclusive easement to store water in and operate the Empire Reservoir, including those lands within 50 feet of the marginal limits of the Reservoir, for the sole purposes of irrigation and those other uses specified in 43 U.S.C. § 949.

2. The Landowners do not have the right to use the surface of the water stored in the Reservoir for recreational and piscatorial purposes, without the consent of the District.

3. The District has no right to utilize the surface of the water stored in the Reservoir for recreational and piscatorial purposes, or any other purposes not included within the provisions of the 43 U.S.C. § 949.

4. The Landowners are enjoined from using the surface of the water stored in the Empire Reservoir for recreational and piscatorial purposes, without the consent of the District.

5. In light of the fact that the Colorado Supreme Court determined that none of the parties have the right to utilize the Empire Reservoir for recreational and piscatorial purposes, the Court directs, in accordance with Rule 54(d), Colo.R.Civ. P., that each party shall bear its own costs and attorneys' fees in this matter.

## II

Barnett purchased real property underlying and abutting the Empire Reservoir in 1988. He leased his lands to the Morgan Recreation Club to provide access to the Empire Reservoir from 1988 until this court entered its decision in the Bijou case in 1991. Barnett interpreted *Bijou* and the amended order of the district court as prohibiting his use of water stored in the Empire Reservoir overlying or adjacent to his property. However, he concluded,

based on footnote 18[1] in the *Bijou* decision, that the federal and state lands within and surrounding the reservoir were excluded. The record reflects that the BLM, the Colorado Division of Wildlife (DOW), and the Colorado State Board of Land Commissioners own land adjacent to and underlying the Empire Reservoir. Barnett contacted representatives of both the State of Colorado and the BLM, and obtained a letter from Frank Young of the BLM that stated:

> As we explained to you, BLM's policy is that these lands are open to public use, just like any other piece of BLM land. We believe that the public is entitled to use not only the dry lands above the actual water line of the reservoir, but also the waters above the BLM land.[2]

Based upon the BLM letter and the information he received from state agents, Barnett sold access permits to his land that included a map, restrictions on the use of the access permit, and directions as to how to cross his land to gain access to the BLM land and the Empire Reservoir. He also constructed a road across his property to the BLM lands to avoid use of the District's maintenance road. The access fee permitted the holder to drive a motor vehicle with an attached boat trailer and boat over Barnett's land to reach the BLM land and Empire Reservoir. Barnett advised those who acquired a permit from him that they could launch their boats from the BLM land and could boat on the water stored in the reservoir overlying both the state and federal land, but that they could not launch boats from his private land or in anywise use the water above his land. He also told those who obtained permits that they could not drive on the DOW or state land without the permission of the DOW.

Barnett monitored the activities on his land to insure that the actions of the recreational users conformed with his instructions. However, in spite of his efforts to control the access and use of his property, swimmers were seen in the waters contiguous to his property and it was apparent that they gained access to the reservoir from Barnett's land. A boat was also observed on the water overlying Barnett's property. On one other occasion two boats were seen on the water stored over Barnett's land and the district court inferred that the boats were launched from Barnett's property. It was not disputed that Barnett did not authorize use of his lands to gain access to the water adjacent to his land and that he was not aware that the swimmers and boaters had used his land to reach the reservoir. To avoid further violations of the district court's order, Barnett installed a gate across his boat ramp that had been used prior to the *Bijou* decision and the district court's amended order, and appointed ten individuals to monitor the activities on his property.

The District notified Barnett that he was violating the provisions of the *Bijou* decision and the amended order and decree of the district court. Barnett replied that he did not intend to violate the supreme court's opinion or the district court's order. The district court, following a hearing on the contempt citation, set forth the issues to be determined:

> (1) whether Barnett's use of his land to allow public access for a fee to the BLM lands constitutes a violation of the Supreme Court opinion and this Court's May 10, 1991 implementing order and injunction; and (2) whether the use by certain persons of Barnett's property and boat ramp to access the water stored in the Reservoir directly from Barnett's property constitutes a violation of the

---

**1.** In *Bijou Irrigation District v. Empire Club*, 804 P.2d 175 (Colo.1991), we stated in footnote 18:
> The Landowners are asserting private rights, not public rights, and we have no occasion to determine the nature and extent of any public rights that may exist or be created for use of Empire Reservoir. Moreover, neither the State of Colorado nor the Bureau of Land Management is a party to the declaratory action, and any rights to use of the reservoir that might be asserted by these landowners are not at issue in this case.
>
> *Id.* at 185 n. 18.

**2.** The letter also said that BLM's policy did not permit trespass on private lands nor did it allow any improvements to be made on the public lands without prior BLM permission.

Supreme Court opinion and this Court's order.

The first question was answered in the negative and the second in the affirmative.. The district court reviewed the record and stated:

The Supreme Court did not address the public use issue. It did not have an opportunity to balance the law and policy regarding public use of the Federal and State lands, and water stored thereover, with the District's need for control of the Reservoir. It was the District's decision not to join the United States and the state of Colorado as parties to the underlying litigation. Moreover, counsel for the District represented to this Court at the trial that the District did not in any way intend any decision in this case to impact the use of Federal lands. By stipulation and order entered in the underlying case ... the District covenanted that no decision in this litigation would affect the State's property interests in and use of its lands in and around the Reservoir. The District's interpretation of the Supreme Court opinion seeks to expand the scope of the opinion to include the use of Federal and State lands, and water stored over these lands. By the District's own hand, neither those issues nor those parties were considered in this litigation.

....

There is significant evidence in the record that the District's interpretation of the Supreme Court opinion is contrary to the position of the Federal and State governments concerning the use of their Empire Reservoir lands, and the water stored thereover. First, Frank Young of the BLM testified that the BLM's current position is that the public is entitled to utilize the BLM lands and the water stored thereover for recreation, and that such use was consistent with the District's federal right-of-way.

The District argues that Barnett's conduct promotes the same mischief which the Supreme Court sought to remedy. The Court disagrees. Barnett's use of his property to allow access to the public lands is not within the scope of the Su-

preme Court opinion. This Court does not find that Barnett's use of his property to allow access to the public lands violates the letter or spirit of the Supreme Court opinion. It is not uncommon for people to find alternative means of accomplishing what has not been specifically addressed by law. Barnett's actions are legitimate until a court rules that they are prohibited. The point is that neither this Court's order nor the Supreme Court opinion has addressed the issue.

The District also argues that Barnett is making private use of public lands, not the public use excluded from the Supreme Court opinion. The facts belie this conclusion. Barnett is requiring people to pay him for access to the public lands. Although he limits the number of families to 100, he allows anyone access who pays the required fee. Barnett does not control their activities on the public lands nor on the water overlying those lands. The fact that these people pay Barnett for access does not make their use any less public than any other person who accesses the Reservoir by different means. The BLM apparently concurs with this conclusion. Accordingly, these persons should be treated no differently from members of the public who otherwise gain lawful access to the waters stored in the Reservoir.

The Court finds that Barnett's conduct in allowing people for a fee to access through his lands to the public lands in and around the Reservoir, is not within the scope of the Supreme Court opinion, and, accordingly, not within the scope of this Court's subsequent Amended Judgment and Decree implementing that opinion. Barnett's actions in this regard are not contemptuous.

....

There is no question that the District has legitimate concerns about persons accessing the Reservoir for recreation. The Supreme Court gave explicit regard to the fact that the District must have control over water stored in the Reservoir in light of the fact that the Reser-

voir level undergoes rapid fluctuations; that the District is liable for water escaping from the Reservoir; that such control is necessary for control of liability; and that the water stored in the Reservoir was appropriated by the District. *Bijou*, 804 P.2d at 184. These [concerns] led the Court to declare that the landowners are prohibited from accessing the Reservoir through their lands, either individually, or through some commercial enterprise. The Court takes the Supreme Court's admonitions very seriously.

The Court finds that on June 8 and June 29, 1991, people accessed through Barnett's property the water stored in the Reservoir overlying Barnett's land. Although Barnett did not grant permission for this use, and actively instructed these people not to access the Reservoir directly through his lands, Barnett nevertheless opened the door to such a violation when he allowed people to access his property. It is true that Barnett took immediate steps to prevent future violations, including placing a gate on the boat ramp and appointing monitors to oversee use of his lands. Nevertheless, those measures occurred after the violation had already occurred. Barnett should have reasonably anticipated that people would disregard his instructions, and would access the Reservoir directly though his lands. Therefore, the Court finds that on June 8 and 29, 1991, Barnett was in willful contempt of this Court's order as a result of his allowing persons to enter his property, under circumstances where it was reasonably foreseeable that they would violate the Court's order and enter the Reservoir directly from Barnett's property.

In considering the punishment [to] impose for Barnett's contempt, the Court must take into account the serious matters addressed by the Supreme Court. The punishment must reflect the seriousness of this situation, and create a strong [disincentive] for future violations.

The district court then entered the following findings in accordance with C.R.C.P. 107(c) and (d):

1. Barnett is hereby fined $5,000.00, which fine is suspended, so long as for the next one year period ending on July 31, 1992, the following conditions are met:

a. Neither Barnett nor anyone who has paid him for access through his property shall use Barnett's property for direct access to water stored over Barnett's lands in the Empire Reservoir for any purpose. This condition does not prohibit Barnett from allowing persons for a fee to access through his property the BLM or [State] Land, and water stored thereover. As determined above, that conduct is not within the scope of the Supreme Court opinion or this Court's order.

b. Neither Barnett nor anyone who has paid him for access through his lands shall in any way interfere with the riprap located on the earthen dike on Barnett's property, to the extent that the riprap is in its proper place on the dike. This condition does not prohibit persons from removing riprap from the beach and placing it on the dike; rather, it only prohibits persons from removing or otherwise interfering with riprap which is in its proper place on the dike and is serving its intended purpose.

c. Barnett is required to inform the District on a regular basis of the condition of the riprap on the dike on Barnett's property, particularly whether riprap is out of place.

d. Barnett is to provide the District with a current list of "members," the persons who have paid him a fee for access to the public lands. Barnett must instruct these persons that, if requested, they must identify themselves to the District's personnel.

e. Barnett's "members" shall not utilize the District's maintenance road for access through Barnett's property to the public lands.

2. Upon Barnett's compliance with the above-described conditions for a period of one year, until July 31, 1992, the $5,000.00 fine shall be permanently suspended.

3. Each party shall pay its own attorneys fees incurred in this proceedings. The District may submit a bill of costs which the Court will consider in accordance with C.R.C.P. 54(d).

DONE this 3rd day of October, 1991.

### III

In our view, the trial court meticulously interpreted our opinion in *Bijou Irrigation District v. Empire Club* in both the preparation of the amended judgment and decree and in the determination of the contempt proceeding against Barnett. The district court's findings and order are fully supported by evidence in the record and are accordingly affirmed.

