2022 CO 22 The Farmers Reservoir and Irrigation Company, Applicant-Appellant/Cross-Appellee v. Public Service Company of Colorado; Irrigationists Association; Central Colorado Water Conservancy District; Fort Morgan Reservoir and Irrigation Company; City of Brighton; City of Commerce City; Henrylyn Irrigation District; South Adams County Water and Sanitation District; Town of Lochbuie; Platte Valley Irrigation Company; City of Englewood; City of Aurora; Lower Latham Reservoir Company; Dream Weaver Holdings LLC; City of Thornton; Centennial Water and Sanitation District; Kevin Rein, State Engineer; and Corey DeAngelis, Division Engineer for Water Division 1; and Opposer-Appellees/Cross-Appellants: Arapahoe County Water and Wastewater Authority, East Cherry Creek Valley Water and Sanitation District, and United Water and Sanitation District. No. 21SA122
Supreme Court of Colorado, En Banc
May 16, 2022
 
           Appeal
 from the District Court Water Division 1, Case No. 16CW3052
 Honorable James F. Hartmann, Water Judge
 
 1
 
          
 Attorneys for Applicant-Appellant/Cross-Appellee: Fairfield
 and Woods, P.C. Joseph B. Dischinger Beth Ann J. Parsons
 
 
          
 Attorneys for Opposer-Appellee Platte Valley Irrigation
 Company: Lyons Gaddis Kahn Hall Jeffers Dworak & Grant,
 PC Scott E. Holwick Kara N. Godbehere
 
 
          
 Attorneys for Opposer-Appellees Kevin Rein, State Engineer;
 and Corey DeAngelis, Division Engineer for Water Division 1:
 Philip J. Weiser, Attorney General Paul L. Benington, First
 Assistant Attorney General Christopher R. Stork, Assistant
 Attorney General
 
 
          
 Attorneys for Opposer-Appellees/Cross-Appellants Arapahoe
 County Water and Wastewater Authority and East Cherry Creek
 Valley Water and Sanitation District: Nazarenus Stack &
 Wombacher LLC Brian M. Nazarenus Sheela S. Stack William D.
 Wombacher Stacy L. Brownhill
 
 
          
 Attorneys for Opposer-Appellee/Cross-Appellant United Water
 and Sanitation District: Law Office of Tod J. Smith, LLC Tod
 J. Smith
 
 2
 
          Ann
 Rhodes, LLC Ann M. Rhodes
 
 
           No
 appearance on behalf of: Public Service Company of Colorado,
 Irrigationists Association, Central Colorado Water
 Conservancy District, Fort Morgan Reservoir and Irrigation
 Company, City of Brighton, City of Commerce City, Henrylyn
 Irrigation District, South Adams County Water and Sanitation
 District, Town of Lochbuie, City of Englewood, City of
 Aurora, Lower Latham Reservoir Company, Dream Weaver Holdings
 LLC, City of Thornton, and Centennial Water and Sanitation
 District.
 
 
           CHIEF
 JUSTICE BOATRIGHT, JUSTICE MÁRQUEZ, JUSTICE HOOD,
 JUSTICE GABRIEL, JUSTICE HART, and JUSTICE SAMOUR joined.
 
 3
 
          
 OPINION
 
 
          
 BERKENKOTTER, JUSTICE
 
 
          ¶1
 This case comes to us on appeal from a judgment of the
 Division 1 Water Court and concerns the right to use water
 that has been the subject of litigation for nearly two
 decades. In Case No. 02CW403, and again in Case No. 10CW306,
 [1] the
 Division 1 Water Court determined, among other things, that
 the Farmers Reservoir and Irrigation Company
 ("FRICO") did not have a decreed right to use
 seepage water accruing to a ditch known as the Beebe Seep
 Canal. FRICO nonetheless continued to utilize the seepage
 water outside the priority system to make additional water
 available to its shareholders for irrigation.
 
 
          ¶2
 Fast forward to April 18, 2016, when FRICO filed the
 underlying application to obtain a decree to use this seepage
 within the priority system. More specifically, FRICO sought a
 decree confirming absolute and conditional water rights to
 use unappropriated (1) water seeping from Barr Lake, and (2)
 natural runoff, drainage, waste, return flows, and seepage
 water arising in, flowing into, and accruing to the Beebe
 Seep Canal (the "Subject Water Rights") to
 supplement
 
 4
 
 water deliveries to its shareholders for irrigation.
 Following the culmination of stipulations with most of the
 twenty initial objectors and, ultimately, a five-day trial,
 the water court issued its final judgment confirming,
 adjudicating, approving, and decreeing FRICO's use of the
 Subject Water Rights contingent upon certain terms and
 conditions outlined within the water court's Amended
 Findings of Fact, Conclusions of Law, Judgment and Decree of
 the Court ("Amended Decree").
 
 
          ¶3
 The issues raised by FRICO in this appeal concern three of
 the specific terms and conditions that the water court placed
 upon FRICO's use of the Subject Water Rights. The issue
 raised by three of the objectors in their cross-appeal
 concerns the water court's authority to grant certain of
 these new rights.
 
 
          ¶4
 As articulated more fully below, we hold that the water
 court's findings, and its imposition of the challenged
 terms and conditions included in the Amended Decree, are
 supported by the record and did not violate FRICO's right
 to appropriate unappropriated water. We further conclude that
 the water court was within its authority to grant FRICO the
 absolute rights challenged by the three objectors in their
 cross-appeal. Accordingly, we affirm the judgment of the
 water court.
 
 5
 
          I.
 Facts and Procedural History
 
 
          A.
 Overview
 
 
          ¶5
 FRICO is a mutual ditch company that owns and operates a
 ditch and reservoir system that provides water to its more
 than 500 shareholders for irrigation in Weld and Adams
 counties. The underlying decree application involves the Barr
 Lake and Milton Lake Divisions of FRICO's system.
 
 
          ¶6
 As outlined on the map below-which was admitted as an exhibit
 at trial-Barr Lake is situated approximately twenty miles
 upstream of Milton Lake. The Beebe Seep Canal, an unlined,
 private person-made ditch owned and operated by FRICO, is
 used to transport water from Barr Lake to Milton Lake. The
 Beebe Seep Canal collects seepage from Barr Lake that is
 discharged through toe drains and underflow from Barr Lake,
 which is collected in the interceptor ditch below the Barr
 Lake Dam, as well as seepage water captured in the Beebe
 Draw, [2]including surface runoff, accretions from
 groundwater aquifers, irrigation return flows, and irrigation
 wastewater.
 
 
          ¶7
 The Milton Lake Division primarily receives its water from
 the South Platte River, through the Platte Valley Canal, but
 FRICO also holds a decree allowing
 
 6
 
 water to be diverted through the Burlington Canal to Barr
 Lake, where the water is then carried downstream through the
 Beebe Seep Canal to Milton Lake. While FRICO physically
 receives seepage water from the Beebe Seep Canal, it did not,
 before the decree issued in this case, have any decreed right
 to use this water.
 
 
          ¶8
 The Beebe Seep Canal also includes diversion structures-the
 Bowles Seep Canal and East Neres Canal-that divert and
 deliver water for direct use to shareholders. The Subject
 Water Rights at issue here include both direct use and
 storage structures. Through its application, FRICO sought a
 decree confirming absolute and conditional rights to put the
 seepage water to direct use for irrigation through the Bowles
 Seep Canal or the East Neres Canal.[3] FRICO also sought a decree
 confirming its right to store the Subject Water Rights in
 Barr Lake, via the Beebe Seep Canal Pump Station or in Milton
 Lake, through use of what is described in the Amended Decree
 as the Milton Lake Seep Right, to later be used for
 irrigation. One of the issues at trial in this case was
 whether FRICO should have the right to beneficially use the
 Subject Water Rights-particularly the Milton
 
 7
 
 Lake Seep Right-as a supplement to its already-decreed water
 rights, particularly its 1909 Milton Lake Storage Right
 ("1909 Storage Right").
 
 
          Image
 Omitted
 
 8
 
          B.
 Previous Decrees Related to the Subject Water Rights
 
 
          ¶9
 This is not FRICO's first rodeo. Prior to its present
 application, FRICO had been utilizing the seepage water
 accruing in the Beebe Seep Canal out of priority and without
 a decree as a means of delivering supplemental water to
 shareholders, in the full amount released, without deducting
 for transit losses (water lost to evaporation or seepage when
 it moves from one point to another). This practice was
 addressed by the water court in two prior orders: Case Nos.
 02CW403 and 10CW306. In both instances, the water court
 concluded that FRICO did not have a decreed right to use the
 seepage water accruing to the Beebe Seep Canal. ¶10 In
 2008, in Case No. 02CW403, the water court made findings as
 to the seepage water accruing in the Beebe Seep Canal and
 concluded that FRICO was "not entitled to claim water
 attributed to the seepage gain accruing to the Beebe [Seep]
 Canal" under its senior water rights and that seepage
 flows into ditches cannot be used independent of existing
 priorities on the river. Thus, the water court held that
 FRICO did not have a decreed right to appropriate the seepage
 water collecting along and accruing to the Beebe Seep Canal.
 
 
          ¶11
 Later, in 2014, in Case No. 10CW306, the water court
 reaffirmed that the Beebe Seep Canal seepage water was not
 decreed as another supply source or diversion point for FRICO
 to use to fill Milton Lake.
 
 9
 
          ¶12
 Nonetheless, based on what the water court below described as
 a "misconception" of these orders, FRICO continued
 to use this seepage water for the benefit of its
 shareholders. Specifically, FRICO used the seepage water out
 of priority to offset transit losses that would otherwise
 have reduced the amount of water FRICO delivered to
 shareholders, via release from Barr Lake, by nearly
 forty-seven percent.
 
 
          C.
 Pertinent Events Preceding Trial
 
 
          ¶13
 In its April 18, 2016, application, FRICO identified its
 intended options for the Subject Water Rights' use: (1)
 store them in Barr Lake, by way of the
 (yet-to-be-constructed) Beebe Seep Canal Pump Station, for
 later release and use for irrigation; (2) store them in
 Milton Lake, through use of the Milton Lake Seep Right, for
 later release and use for irrigation; or (3) put the water to
 direct use for irrigation through the Bowles Seep Canal and
 the East Neres Canal. Twenty parties, including the State
 Engineer and Division Engineers (the "Engineers"),
 filed in opposition to FRICO's application.
 
 
          ¶14
 Before trial, FRICO entered into a stipulation with all of
 the opposing parties except East Cherry Creek Valley Water
 and Sanitation District, Arapahoe County Water and Wastewater
 Authority, and United Water and Sanitation District
 (collectively, "EAU").
 
 10
 
          D.
 Trial Over Appropriation of the Subject Water Rights
 
 
          ¶15
 At trial, FRICO presented evidence of its past use and future
 intent to appropriate the Subject Water Rights, as well as
 its shareholders' need for additional water for
 irrigation. In doing so, it argued that shareholders use
 water diverted in priority from the Beebe Seep Canal at the
 East Neres Canal and the Bowles Seep Canal directly for
 irrigation purposes. It further asserted that the
 shareholders later use seepage inflows that are stored in
 Milton Lake in priority and then released through the Gilmore
 Canal-an outlet canal below Milton Lake-for irrigation. The
 Milton Lake Seep Right, FRICO asserted, could serve as
 additional water for shareholders' use during years when
 FRICO is unable to fill Milton Lake with its 1909 Storage
 Right or to offset losses resulting from releases in years
 when Milton Lake does fill with the 1909 Storage Right. In
 particular, FRICO presented evidence that it had previously
 diverted the absolute portion of the Milton Lake Seep Right
 in priority both before and after Milton Lake's initial
 fill under its 1909 Storage Right, and its shareholders had
 put the water to beneficial use.
 
 
          ¶16
 FRICO called two witnesses at trial: Scott Edgar, FRICO's
 General Manager, and Heather Thompson, P.E. Edgar testified
 as to FRICO's day-to-day practices and operations,
 including its maintenance, delivery, allocation, and storage
 systems. Specifically, Edgar testified concerning FRICO's
 practice of diverting
 
 11
 
 water for delivery and release to shareholders, and he
 admitted, as he had in his discovery responses, that it was
 FRICO's practice to use seepage gains out of priority to
 offset transit losses, despite the previous orders from the
 water court in Case Nos. 02CW403 and 10CW306 expressly
 prohibiting such conduct.
 
 
          ¶17
 FRICO called Thompson to testify as an expert in water
 resources engineering, water rights administration, and water
 rights accounting. Thompson testified as to FRICO's
 operations at the Milton Lake Division and its claimed need
 for additional water beyond its 1909 Storage Right. After
 quantifying the amount of water available to meet the
 irrigation needs of FRICO's shareholders, Thompson
 testified to the following:
 
 
 Q. [D]oes that indicate to you that the Milton system is also
 water short?
 
 
 A. It does, because the consumptive irrigation requirement is
 1.8 acre-feet per acre, but the water supply under a full
 allocation scenario is only approximately .6 acre-feet per
 acre.
 
 
 Q. And does the Milton Lake system always deliver a full
 allocation?
 
 
 A. It does not.
 
 
 Q. So the Milton division would be even more water short in
 the years that the full allocation is not delivered; is that
 correct?
 
 
 A. Yes, that's correct.
 
 
          ¶18
 While asserting that the Milton Lake Division is water short
 (meaning that shareholders generally do not have enough water
 under existing water rights to meet their full irrigation
 needs) and could benefit from additional supply,
 
 12
 
 Thompson acknowledged that the 1909 Storage Right did not
 include a refill right. Thompson also posited that the Milton
 Lake Seep Right could be used to fill or refill Milton Lake,
 or it could be used to offset losses resulting from releases.
 
 
          ¶19
 Thompson also testified as to the seepage gains diverted at
 the East Neres Canal and the Bowles Seep Canal that FRICO
 subsequently delivered to shareholders for irrigation. After
 reviewing FRICO's accounting of the seepage gains
 diverted for irrigation when in priority, Thompson testified
 that the East Neres Canal Seep Right was made
 absolute[4] on July 2, 2011, when 4.2 cubic feet per
 second ("cfs") of seepage gains were diverted
 without there being a downstream call. She testified that
 "[i]t was free river [that] month, and that water was
 put to beneficial use," specifically because it was
 "delivered to shareholders and used for
 irrigation." Similarly, Thompson testified that the
 accounting indicated that FRICO diverted 1.1 cfs of seepage
 gains at the Bowles Seep Canal on July 25, 2011, which
 established its appropriation date because it "was the
 first date that . . . could show that seepage gains were
 diverted in-priority and beneficially used."
 
 13
 
          ¶20
 EAU called its own expert, Matt Bliss, P.E., an expert in
 water rights, water resources, groundwater rights, water
 rights accounting, water rights administration, and water
 supply planning. EAU relied on Bliss's testimony to argue
 that FRICO's claim in the application concerning the
 Milton Lake Seep Right should be denied outright because the
 seep right would not make more water available to
 shareholders but, instead, displace water that could
 otherwise be diverted into Milton Lake under the 1909 Storage
 Right. Bliss testified that, in his view, FRICO's claim
 to make the Milton Lake Seep Right absolute was based on
 diversions in a year in which FRICO diverted zero acre-feet
 under existing storage rights for Milton Lake. FRICO
 accomplished this, Bliss explained, by paper-filling its
 senior 1909 Storage Right, thereby creating capacity for the
 storage of the junior Milton Lake Seep Right.[5] Bliss also
 suggested that if the water court granted the application, it
 should include terms and conditions on the Milton Lake Seep
 Right to prevent FRICO from using the new junior right to
 manipulate the priority
 
 14
 
 system and substantially expand Milton Lake's fill
 capacity beyond its 1909 Storage Right.
 
 
          E.
 The Water Court's Amended Decree
 with Respect
 to the Subject Water Rights
 
 
          ¶21
 On October 6, 2020, the water court issued its Findings of
 Fact, Conclusions of Law, and Judgment. The court directed
 FRICO to circulate a proposed decree based on the Judgment,
 and it granted the opposing parties additional time
 thereafter to comment on FRICO's proposed decree. FRICO
 submitted a proposed final decree on December 15, 2020,
 containing all the parties' suggested revisions.
 
 
          ¶22
 On December 20, 2020, the water court entered its Findings of
 Fact, Conclusions of Law, Judgment and Decree of the Court
 ("Decree"), which approved the Subject Water
 Rights, including those at the Bowles Seep Canal and the East
 Neres Canal, in addition to those at Barr Lake and Milton
 Lake. However, the Decree also imposed some limitations on
 the Subject Water Rights-pertinent to this appeal are the
 limitations in paragraphs 29, 30, and 36.
 
 
          ¶23
 These paragraphs read, in relevant part, as follows:
 
 
 29. Transit Losses. . . . For the purpose of
 quantifying the Subject [Water] Rights, FRICO shall account
 for the amount of water released from Barr Lake and
 Milton Lake for delivery to shareholders and then
 calculate the amount of transit loss if assessed by the
 Division Engineer. This will ensure that FRICO does not
 divert seepage water out-of-priority or divert others'
 recharge water and will allow certainty that FRICO is
 delivering the correct amount of water released from storage
 to shareholders. This will also ensure that FRICO accurately
 accounts for deliveries from FRICO's other water
 
 15
 
 rights and the amount attributable to seepage water diverted
 in priority. This will assure that FRICO is not expanding the
 Subject [Water] Rights, in the event there is seepage water
 available above the amounts decreed to FRICO, for other water
 users to appropriate. . . .
 
 
 30. Out-of-Priority Inflows. . . . FRICO will not
 divert water, or place a call, under the Barr Lake Seep Right
 or Milton Lake Seep Right if there is any water in the
 [owe-the-river ("OTR")[6] accounts in those respective
 reservoirs. When FRICO cannot divert under the Milton Lake
 Seep Right because of the presence of water in the OTR
 account in Milton, all inflows of Seepage Inflow in
 Milton Lake shall be accounted for as
 [out-of-priority seepage inflow ("OOPSI")]
 in FRICO's OTR account consistent with paragraph
 20.2.1 above.
 
 
 . . . .
 
 
 36. Milton Lake-One Fill. Milton Lake is entitled to
 one annual fill from diversions under its existing
 1909 Storage Right or from the Milton Lake Seep
 Right. When Milton Lake has filled or achieved its winter
 fill level, no additional in-priority diversions under the
 Milton Lake Seep Right can occur during that water year,
 except to increase from the winter fill to the normal fill
 level.
 
 
 (Emphases added.)
 
 
          ¶24
 FRICO subsequently filed a motion for reconsideration,
 requesting, among other things, that the court omit certain
 limiting language in these three paragraphs. FRICO argued
 that the record did not support the water court's
 limitations and deprived FRICO of its constitutional right to
 appropriate unappropriated water to put to beneficial use. In
 response, EAU argued that the
 
 16
 
 record and the law did, in fact, support the limiting
 language in paragraphs 29, 30, and 36.
 
 
          ¶25
 On February 22, 2021, the water court entered an order
 denying FRICO's motion regarding these limiting
 conditions. The order stated, in relevant part,
 
 
 The Court has considered the arguments of counsel in the
 pleadings and the contents of the record, and the Court finds
 that there are ample facts in the record to support the
 provisions of paragraphs 29, 30, and 36 as written. The Court
 purposely included the language found in those three
 paragraphs based on the evidence presented at trial and to
 prevent injury to other water users. The Court agrees with
 the arguments presented by EAU in their response to
 FRICO's motion for reconsideration.
 
 
          ¶26
 The water court then entered an Amended Decree, which
 constituted the water court's final judgment.
 
 
          ¶27
 FRICO appealed the terms and conditions of paragraphs 29, 30,
 and 36 of the Amended Decree to this court.[7] EAU filed a
 cross-appeal opposing the water
 
 17
 
 court's finding that evidence presented at trial
 supported FRICO's claim to make a portion of the East
 Neres Seep Right and the Bowles Seep Canal Right
 absolute.[8]¶28 After outlining the standard of
 review and certain relevant legal principles, we turn our
 attention to each of these issues.
 
 
          II.
 Analysis
 
 
          ¶29
 First, we identify the applicable standards of review. Next,
 we discuss Colorado's prior appropriation system and the
 various terms and conditions that a water court may include
 in a decree to limit the use of a water right. Then, we
 discuss the law surrounding the water court's exercise of
 ancillary jurisdiction over this case and the water
 court's decision to grant absolute portions of the
 claimed water rights. Finally, we conclude that the water
 court did not err by awarding FRICO the new water rights or
 by placing certain limitations on the use of the Subject
 Water Rights. Therefore, we affirm the water court's
 judgment and Amended Decree.
 
 18
 
          A.
 Standards of Review
 
 
          ¶30
 On appeal, we accept a water court's factual findings
 "unless they are so clearly erroneous as to find no
 support in the record." Burlington Ditch Reservoir
 & Land Co. v. Metro Wastewater Reclamation Dist.,
 256 P.3d 645, 660 (Colo. 2011); see also Grand Valley
 Water Users Ass'n v. Busk-Ivanhoe, Inc., 2016 CO 75,
 ¶ 21, 386 P.3d 452, 460. We review a water court's
 conclusions of law de novo. Burlington Ditch, 256
 P.3d at 661.
 
 
          B.
 Relevant Legal Principles
 
 
          ¶31
 Under Colorado law, natural stream water is considered public
 property for public use. Dill v. Yamasaki Ring, LLC,
 2019 CO 14, ¶ 24, 435 P.3d 1067, 1074. Because water
 rights are classified as usufructuary rights in Colorado, an
 individual or entity cannot own water but, instead, may own
 the right to use the water within the bounds of the prior
 appropriation system. Burlington Ditch, 256 P.3d at
 661; Grand Valley, ¶ 28, 386 P.3d at 461.
 
 
          ¶32
 An appropriation, under Colorado's prior appropriation
 system, occurs when a person or entity places "a
 specified quantity of water to an actual beneficial
 use." Burlington Ditch, 256 P.3d at 661. The
 need to place the water "to an actual beneficial
 use" ensures that the appropriation adheres to
 "[t]he anti-speculation doctrine, which has existed in
 Colorado prior appropriation water law since its inception in
 Territorial and early-Statehood days" and seeks to
 "prevent[]
 
 19
 
 unlawful enlargements, as well as curb[] the appropriation of
 water not needed for actual beneficial use."
 Id.
 
 
          ¶33
 The General Assembly has defined beneficial use as "the
 use of that amount of water that is reasonable and
 appropriate under reasonably efficient practices to
 accomplish without waste the purpose for which the
 appropriation is lawfully made." § 37-92-103(4),
 C.R.S. (2021). Once an appropriation is established and the
 appropriator has placed the water to beneficial use, the
 water right vests. Dill, ¶ 24, 435 P.3d at
 1074. The water right may then be used based on its priority
 relative to other junior and senior water rights drawn from a
 common source. See id.; see also §
 37-92-103(10) ("'Priority' means . . . the
 relative seniority of a water right or a conditional water
 right in relation to other water rights . . . [that] deriv[e]
 their supply from a common source.").
 
 
          ¶34
 The holder of a water right may file an application with the
 water court to request that the right be adjudicated and
 memorialized in a water decree. See Dill, ¶ 25,
 435 P.3d at 1074. Significantly, "a water right owner is
 not entitled to have his or her water right administered
 within the priority system until he or she obtains a judicial
 decree confirming the water right." V Bar Ranch LLC
 v. Cotten, 233 P.3d 1200, 1208 (Colo. 2010). A decree
 serves to "confirm[] a pre-existing water right"
 that has already been achieved by way of appropriation.
 Dill, ¶ 25, 435 P.3d at 1074 (quoting
 Shirola v. Turkey Cañon Ranch Ltd. Liab. Co.,
 937 P.2d 739, 748 (Colo.1997)).
 
 20
 
 Once a water court adjudicates an appropriation and issues a
 decree, the water right is legally enforceable. Id.;
 V Bar Ranch, 233 P.3d at 1208. However, a water
 court may impose certain terms and conditions in connection
 with the exercise of said water right. See City of
 Thornton v. Bijou Irrigation Co., 926 P.2d 1, 48 (Colo.
 1996) (noting that water decrees may be subject to terms and
 "conditions designed to protect other appropriators
 against injury").
 
 
          ¶35
 Bearing these legal principles in mind, we turn to the issues
 before us.
 
 
          1.
 The Water Court Did Not Err by Imposing a One-Fill Limitation
 on Diversions to Milton Lake
 
 
          ¶36
 FRICO takes issue with the language in paragraph 36 of the
 Amended Decree, which provides that "Milton Lake is
 entitled to one annual fill from diversions under
 its existing 1909 Storage Right or from the Milton
 Lake Seep Right," and that "[w]hen Milton Lake has
 filled or achieved its winter fill level, no additional
 in-priority diversions under the Milton Lake Seep Right can
 occur during that water year, except to increase from the
 winter fill to the normal fill level." (Emphases added.)
 It contends that restricting the Milton Lake Seep Right in
 this manner improperly limits the right to serve only as a
 supplemental supply under its first fill. This, FRICO argues,
 is unconstitutional, inconsistent with Colorado law, and is
 not supported by the evidence in the record. We disagree.
 
 
          ¶37
 Our constitution makes clear that "[t]he right to divert
 the unappropriated waters of any natural stream to beneficial
 uses shall never be denied." Colo. Const.
 
 21
 
 art. XVI, § 6. This right is further grounded in
 statute. See § 37-92-305(9)(a), C.R.S. (2021)
 ("No claim for a water right may be recognized or a
 decree therefor granted except to the extent that the waters
 have been diverted, stored, or otherwise captured, possessed,
 and controlled and have been applied to a beneficial use . .
 . ."). Though this right is both constitutional and
 statutory, it is not absolute.
 
 
          
 ¶38 For example, the right may not be exercised in a
 manner that would cause injury to other water users: "No
 water storage facility may be operated in such a manner as to
 cause material injury to the senior appropriative rights of
 others." § 37-87-101(1)(a), C.R.S. (2021). To that
 end, water courts maintain the authority to impose terms and
 conditions on the exercise of water rights to prevent injury
 to other water users. See Bijou Irrigation Co., 926
 P.2d at 48. As such, a water court may include a term or
 condition in a decree-such as a "one-fill rule"-in
 order to prevent injury to senior appropriative water rights
 without impeding upon a party's right to appropriate
 unappropriated water. See Burlington Ditch, 256 P.3d
 at 667. A one-fill limitation, in particular, serves to
 "set and administer diversion limitations on storage
 rights to prevent unlawful enlargement and injury to junior
 appropriators." Id.
 
 
          ¶39
 Preventing the unlawful enlargement of a decreed water right
 is particularly important when dealing with a storage right
 because "[s]torage itself is not a beneficial use;"
 rather, it is the subsequent use-such as for irrigation-that
 
 22
 
 constitutes "the beneficial use for which water is
 stored." Id. at 663. This court has continued
 to recognize the benefit of the one-fill limitation,
 including the benefit it provides to the State Engineer's
 Office, which may use it as a mechanism to "curtail
 diversions that may unlawfully enlarge a decree."
 Id.; see North Sterling Irrigation Dist. v.
 Simpson, 202 P.3d 1207, 1211 (Colo. 2009) (concluding
 that a fixed water year, accompanied by a one-fill
 limitation, enables the State Engineer's Office to
 lawfully limit and enforce storage rights). Such a rule
 serves to prevent injury to other appropriators.
 
 
          ¶40
 To support its argument, FRICO points to Thompson's
 expert testimony that the Milton Lake Division was water
 short and displayed a need for additional water beyond that
 provided by its 1909 Storage Right to meet shareholder
 irrigation needs. In her testimony, Thompson noted that
 Milton Lake does not always deliver its full allocation under
 the 1909 Storage Right-which she conceded did not include a
 refill right. Nonetheless, in her view, the Milton Lake Seep
 Right could provide another means of reaching Milton
 Lake's full allocation or provide a means of offsetting
 losses resulting from releases. Her testimony, however, was
 refuted by EAU's expert, Bliss.
 
 
          ¶41
 Bliss testified that FRICO essentially manipulated its claim
 to make the
 
 
          Milton
 Lake Seep Right absolute because it based its diversions on a
 year in which FRICO diverted zero acre-feet under the 1909
 Storage Right. FRICO did that, Bliss
 
 23
 
 explained, by creating capacity for the storage of the Milton
 Lake Seep Right by paper-filling its 1909 Storage Right.
 
 
          ¶42
 True, as FRICO points out, the water court was not ultimately
 persuaded by EAU's argument, based on Bliss's
 testimony, that the absolute claim for the Milton Lake Seep
 Right should be dismissed outright because it did
 not satisfy the exhaustion requirements described in
 Upper Eagle Regional Water Authority v. Wolfe, 2016
 CO 42, ¶ 21, 371 P.3d 681, 687 (involving a claim for
 conditional water rights). But the water court was also not
 completely persuaded by Thompson's testimony, and,
 FRICO's argument aside, there is no real question that
 the water court considered Bliss's concerns in entering
 its October 6, 2020, Findings of Fact, Conclusions of Law,
 and Judgment, and later in determining what terms and
 conditions to impose.
 
 
          ¶43
 Specifically, EAU's closing brief detailed their concerns
 about FRICO's use of the new junior water right, if
 awarded, to fill Milton Lake in lieu of its existing absolute
 water rights, and whether the junior Milton Lake Seep Right
 would be used to manipulate the priority system to the
 detriment of EAU and other water users. In its October 6,
 2020, Findings of Fact, Conclusions of Law, and Judgment, the
 water court addressed EAU's concerns by describing how
 the operation of the Milton Lake Seep Right would not result
 in manipulation of the priority system so long as it was used
 as an alternate fill source for Milton Lake. The water court
 
 24
 
 subsequently added paragraph 36, at EAU's request. Then,
 when FRICO sought reconsideration of paragraph 36's
 inclusion, EAU responded by repeating the same concerns it
 raised in its closing brief. And, when the water court denied
 FRICO's motion for reconsideration, the water court
 expressly noted its agreement with the arguments presented by
 EAU in their response to FRICO's motion for
 reconsideration.
 
 
          ¶44
 Thus, the one-fill limitation in paragraph 36 serves to
 protect other water users from injury. This is because
 operation of the Milton Lake Seep Right in lieu of the 1909
 Storage Right, in connection with the single-fill limit,
 makes a like amount of water available to other
 appropriators. We further conclude that the limitation
 imposed in paragraph 36 of the Amended Decree is supported by
 Bliss's testimony that, without this type of limitation,
 FRICO could use the new junior right-which would add a second
 decreed source of physical supply of water to Milton Lake-to
 expand the 1909 Storage Right and to manipulate the priority
 system to the detriment of other water users.
 
 
          ¶45
 And, as the water court noted, the limitation still allows
 FRICO to utilize its Milton Lake Seep Right under certain
 circumstances: "Although Milton Reservoir typically
 fills each year, there are occasions when FRICO is unable to
 fill the reservoir with its existing sources." This
 limitation thus allows FRICO to use diversions under the
 Milton Lake Seep Right to supplement water sources from
 
 25
 
 its senior rights to Milton Lake on those occasions. And,
 rather than effectively permitting the enlargement of the
 total volume of water FRICO may store in Milton Lake beyond
 that of the 1909 Storage Right, see Burlington
 Ditch, 256 P.3d at 667, the water court emphasized
 Milton Lake's one-fill limitation in paragraph 36 as a
 means of prohibiting FRICO from improperly enlarging its
 senior storage right and preventing injury to other
 appropriators.
 
 
          ¶46
 Under these circumstances, the water court did not violate
 FRICO's constitutional or statutory right to appropriate
 unappropriated water to put to beneficial use. Rather, the
 water court properly maintained limits on such use to prevent
 injury to other water users, expressly confirming that it
 "purposely included the language found in [this]
 paragraph[] based on the evidence presented at trial"
 and that the language was incorporated "to prevent
 injury to other water users." Because the limitation was
 necessary to prevent injury to other water users and was not
 clearly erroneous, we affirm the water court's inclusion
 of paragraph 36 in the Amended Decree.
 
 
          2.
 The Water Court Appropriately Required FRICO to Classify
 Seepage Inflows as OOPSI When Water is Present
 in Its OTR Account
 
 
          ¶47
 FRICO next contends that the water court violated FRICO's
 constitutional and statutory right to appropriate
 unappropriated water to put to beneficial use
 
 26
 
 and that the limiting condition set forth in paragraph 30 of
 the Amended Decree is not supported by the record.
 
 
          ¶48
 This limiting condition relates to FRICO's Milton Lake
 OTR account. An OTR account is an administrative accounting
 method used to track out-of-priority inflows stored in a
 reservoir. See Colo. Div. of Water Res., General
 Administration Guidelines for Reservoirs 1, 30 (2011)
 https://dnrweblink.state.co.us/dwr/
 DocView.aspx?id=3579805&dbid=&cr=1
 [https://perma.cc/XM2P-E8XS]. This accounting method measures
 water inflow fluctuations-unmeasured gains or losses from the
 reservoir-that are then accounted for in the reservoir's
 OTR account as a means of maintaining the proper mass
 balance. Id.
 
 
          ¶49
 Specifically, this limiting condition prevents FRICO from
 diverting water, or placing a call under the Subject Water
 Rights, particularly the Milton Lake Seep Right, when there
 is water in the division's OTR account. Furthermore, it
 provides that when "FRICO cannot divert under the Milton
 Lake Seep Right because of the presence of water in the OTR
 account . . . all inflows of Seepage Inflow in Milton Lake
 shall be accounted for as OOPSI in FRICO's OTR
 account."
 
 
          ¶50
 FRICO argues that this limit represents an unconstitutional
 infringement on its right to appropriate and store
 unappropriated water. Specifically, it contends that when
 there is no call on the South Platte River below the Powell
 Spillway,
 
 27
 
 during free river conditions, [9] the seepage inflows amount to
 unappropriated water that it may store and deliver to
 shareholders even when there is water in the Milton Lake OTR
 account. FRICO additionally claims that this limitation would
 essentially require it to fill its Milton Lake OTR account
 with unappropriated water while also trying to drain the same
 account so that it may properly store the Milton Lake Seep
 Right. We disagree.
 
 
          ¶51
 Certainly, we acknowledge the constitutional and statutory
 right to appropriate and store unappropriated waters and
 place that water to beneficial use. Colo. Const. art. XVI,
 § 6; § 37-92-305(9)(a). But FRICO is not simply
 storing unappropriated water and putting it to beneficial
 use. Characterizing it as such is an oversimplification.
 Contrary to FRICO's argument, the existence of free river
 conditions does not permit FRICO to circumvent its accounting
 requirements. This is because the circumvention of those
 requirements would necessarily injure both the river and the
 water rights of other appropriators by preventing the
 recirculation of water held out of priority. See
 Burlington Ditch, 256 P.3d at 661
 
 28
 
 ("Injury involves diminution of the available water
 supply that a water right holder would otherwise enjoy . . .
 .").
 
 
          ¶52
 FRICO must first resolve any present injury to the
 South Platte River-and senior appropriators-caused by its
 storage of seepage inflow in Milton Lake while there is water
 in its OTR account before it may store the Milton
 Lake Seep Right. Thus, the paragraph 30 condition does not
 violate FRICO's constitutional and statutory right to
 store unappropriated waters but, instead, places limits upon
 the right where its exercise causes injury to other water
 users. See Bijou Irrigation Co., 926 P.2d at 48.
 
 
          ¶53
 This condition also aligns with the Engineers' duty to
 "administer, distribute, and regulate the waters of the
 state," § 37-92-501(1), C.R.S. (2021). As part of
 their duties, the Engineers are tasked with accounting for
 diversions and attributing them, in priority, to available
 water rights. Upper Eagle, ¶ 17, 371 P.3d at
 686; see also § 37-92-502(2)(a), C.R.S. (2021)
 ("Each diversion shall be evaluated and administered on
 the basis of the circumstances relating to it and in
 accordance with provisions of this article and the court
 decrees adjudicating and confirming water rights.").
 
 
          ¶54
 This condition assists the Engineers in their duty to order
 that a reservoir maintain an OTR account and to order the
 release of the water improperly stored "to [e]nsure that
 such released waters are delivered to those owners or users
 of
 
 29
 
 water rights who are entitled to the same and to [e]nsure
 that the release will not cause damage." §
 37-92-502(3).
 
 
          ¶55
 Finally, FRICO's arguments regarding paragraph 30 ignore
 its stipulation with the Engineers not to divert water under
 the Milton Lake Seep Right when there is water in the Milton
 Lake OTR account. The stipulation provides that FRICO must
 account for all seepage inflows to Milton Lake as
 OOPSI[10] owed to the river. While FRICO argues
 that this stipulation does not apply during free river
 conditions, the stipulation does not actually say that. In
 fact, the stipulation does not distinguish at all between
 when free river conditions do and do not exist.
 
 
          
 ¶56 And, despite FRICO asserting the contrary, it
 "may stipulate away valuable rights provided it is not
 in violation of public policy." USI Props. E., Inc.
 v. Simpson, 938 P.2d 168, 173 (Colo. 1997). We conclude,
 under these particular circumstances, that FRICO stipulated
 away the right to divert such water and that its stipulation
 does not constitute a violation of public policy.
 
 
          ¶57
 FRICO must pay its debt to the river before accruing more
 water via the Milton Lake Seep Right. This serves to make the
 river whole while also allowing FRICO to obtain water for
 storage and subsequent use by its shareholders.
 
 30
 
          ¶58
 Thus, the water court's inclusion of the condition in
 paragraph 30 of the Amended Decree does not run afoul of
 FRICO's constitutional and statutory right to appropriate
 and store unappropriated water, is consistent with the
 parties' pre-trial stipulation, and is necessary to
 prevent injury to other water users. Because the water
 court's finding is supported by ample evidence in the
 record, it is not clearly erroneous. For all of these
 reasons, we affirm the water court's inclusion of the
 limitation in paragraph 30 of the Amended Decree.
 
 
          3.
 The Water Court Had Ancillary Jurisdiction Over Quantifying
 Transit Losses in the Gilmore Canal
 
 
          ¶59
 FRICO's final argument concerns the limiting condition
 the water court imposed in paragraph 29 of the Amended
 Decree. It provides: "For the purpose of quantifying the
 Subject [Water] Rights, FRICO shall account for the amount of
 water released from Barr Lake and Milton Lake for
 delivery to shareholders and then calculate the amount of
 transit loss if assessed by the Division Engineer."
 (Emphasis added.)
 
 
          ¶60
 Because the Beebe Seep Canal is situated between Barr Lake
 and Milton
 
 
          Lake,
 and due to the structure of those divisions, all of
 FRICO's claimed points of diversion are located above
 Milton Lake. Meanwhile, many of FRICO's shareholders
 within the Milton Lake Division receive their water by way of
 the Gilmore Canal, which is nested below Milton Lake. FRICO
 argues that the water court lacked jurisdiction to require it
 to calculate and quantify transit losses
 
 31
 
 resulting from releases in and below Milton Lake
 through the Gilmore Canal because the Subject Water Rights
 that FRICO sought decreed rights to were accruing to the
 Beebe Seep Canal above Milton Lake. Again, we
 disagree.
 
 
          ¶61
 Water courts have exclusive jurisdiction over all water
 matters. § 37-92-203(1), C.R.S. (2021). "[A]n
 action for determination of a water right or a change of
 water right, each of which concerns the right to use of
 water, is a water matter within the exclusive jurisdiction of
 the water judge." Crystal Lakes Water & Sewer
 Ass'n v. Backlund, 908 P.2d 534, 540 (Colo. 1996)
 (quoting Bijou Irrigation Dist. v. Empire Club, 804
 P.2d 175, 180 (Colo. 1991)); see also Tonko v.
 Mallow, 154 P.3d 397, 404 (Colo. 2007) ("Water
 matters involve determinations regarding the right to use
 water, the quantification of a water right, or a change in a
 previously decreed water right."). And a water matter,
 as this court has previously stated, turns on "the legal
 right to use . . . water (acquired by
 appropriation)." Crystal Lakes, 908 P.2d at 540
 (quoting Humphrey v. Sw. Dev. Co., 734 P.2d 637, 640
 (Colo. 1987)); see also Glover v. Serratoga Falls
 LLC, 2021 CO 77, ¶ 17, 498 P.3d 1106, 1113
 ("Whether a claim constitutes a water matter turns on
 the distinction between 'actions involving the
 use of water and those involving the
 ownership of a water right.'" (quoting
 Kobobel v. Colo. Dept. of Nat. Res., 249 P.3d 1127,
 1132 (Colo. 2011)). And when the right to use water is
 affected by the water court's determination,
 
 32
 
 then the issue constitutes a water matter within the water
 court's jurisdiction. See Crystal Lakes, 908
 P.2d at 541-42.
 
 
          ¶62
 Furthermore, this court has held that a "water court may
 resolve ancillary issues presented in [a] case that are not
 water matters" when the "resolution of those
 ancillary issues would directly affect the outcome of water
 matters within the exclusive jurisdiction of the water
 court." Id. at 543. Put differently, once a
 water court has jurisdiction over a water matter, it
 maintains exclusive jurisdiction over other subjects and
 matters considered ancillary or attendant to the original
 matter. See id.
 
 
          ¶63
 In light of the evidence that FRICO had previously been using
 OOPSI accruing to the Beebe Seep Canal to offset transit
 losses for two decades, thus increasing the amount of water
 available for delivery to shareholders-even though two
 separate court orders explained that FRICO had no right to
 the seepage inflows-the water court necessarily had exclusive
 and ancillary jurisdiction over this matter. Because the
 Gilmore Canal is part of the greater FRICO system and the
 Milton Lake Division, the water court necessarily had
 jurisdiction to require FRICO to account for transit losses
 in the Gilmore Canal to prevent similar actions from
 occurring through the release of the Milton Lake Seep Right.
 
 33
 
          ¶64
 Despite the prior orders in Case Nos. 02CW403 and 10CW306,
 FRICO continued to use seepage water accruing in the Beebe
 Seep Canal to offset the transit losses otherwise
 attributable to releases of water from Barr Lake through the
 Beebe Seep Canal, Bowles Seep Canal, and East Neres Canal.
 This ultimately increased the amount of water delivered to
 FRICO shareholders for beneficial use by as much as
 forty-seven percent.
 
 
          ¶65
 In fact, FRICO continued to claim that it possessed the right
 to use seepage water accruing to the Beebe Seep Canal under
 its prior decrees until the water court expressed its
 significant concern regarding this view mid-trial. Under
 these specific circumstances, the water court necessarily had
 jurisdiction to require that FRICO account for transit losses
 in the Milton Lake Division, including here in the Gilmore
 Canal. Because the Gilmore Canal is part of the greater FRICO
 system, and particularly the Milton Lake Division, the water
 court-under these particular circumstances-necessarily could
 impose a condition to prevent injury to other water users.
 Such a requirement seeks to ensure that FRICO does not engage
 in similar behavior regarding the release of the Milton Lake
 Seep Right. As the water court indicated in paragraph 29,
 such transit loss accounting was necessary to "ensure
 that FRICO does not divert seepage water
 out-of-priority," as Edgar, FRICO's General Manager,
 admitted that it had done in the past.
 
 34
 
          ¶66
 Evidence of FRICO's long-standing past practice of
 diverting seepage water out of priority within the Milton
 Lake Division supports the water court's inclusion of
 this condition to ensure that FRICO properly accounts for the
 water it is entitled to use under the Subject Water Rights
 awarded in the present case and is necessary to prevent
 injury to other water users. As such, the water court did not
 err by requiring such transit loss accounting, and thus we
 affirm the inclusion of paragraph 29 in the Amended Decree.
 
 
          4.
 FRICO Placed Absolute Portions of the Bowles Seep and East
 Neres Seep Canals Seep Rights to Beneficial Use
 
 
          ¶67
 EAU argues that because FRICO diverted seepage water out of
 priority at the Bowles Seep Canal and the East Neres Seep
 Canal, FRICO should not now be able to claim such diversions
 as the basis for an absolute water right. EAU also contends
 that FRICO did not know how or where the water would be used,
 thus making the diversions speculative. We disagree.
 
 
          ¶68
 Appropriation, pursuant to section 37-92-103(3)(a), requires
 "the application of a specified portion of the waters of
 the state to a beneficial use." However, "no
 appropriation of water, either absolute or conditional, shall
 be held to occur when the proposed appropriation is based
 upon the speculative sale or transfer of the appropriative
 rights to persons not parties to the proposed
 appropriation." Id. One way such speculation
 occurs is when the appropriator "does not have a
 specific plan and intent to divert, store, or otherwise
 capture,
 
 35
 
 possess, and control a specific quantity of water" to
 put toward a beneficial use. § 37-92-103(3)(a)(II).
 
 
          ¶69
 In contrast, a water right is considered absolute or
 perfected "only by actual application of the
 water to beneficial use." Burlington Ditch, 256
 P.3d at 662 (emphasis added). Conditional water rights
 require "reasonable diligence in actualizing the
 intended appropriation," whereas an absolute water right
 "confirms that an appropriative right has vested,"
 which includes the identification of the right's place in
 the priority system and the amount of the water right
 conferred. Empire Lodge Homeowners' Ass'n v.
 Moyer, 39 P.3d 1139, 1147-48 (Colo. 2001). Thus, the
 examination of an absolute water right no longer rests on the
 intended use but, instead, on the actual beneficial use of
 the specified quantity of water.
 
 
          ¶70
 At trial, FRICO's expert, Thompson, testified to
 FRICO's practice of diverting seepage inflows at the
 Bowles Seep Canal and East Neres Canal during free river
 conditions that FRICO thereafter delivered to its
 shareholders for irrigation. Specifically, Thompson testified
 that the East Neres Canal Seep Right was made absolute on
 July 2, 2011, when 4.2 cfs of seepage gains were diverted,
 and the Bowles Seep Canal Right was made absolute on July 25,
 2011, when 1.1 cfs of seepage gains were diverted in priority
 without there being a downstream call (i.e., during free
 river conditions).
 
 36
 
          ¶71
 EAU objected, arguing that FRICO's past diversions of
 seepage at the Bowles Seep Canal and the East Neres Canal
 were out of priority and that FRICO should not be able to
 rely on those diversions as the basis for an absolute water
 right. They also asserted that FRICO's diversions were
 speculative because FRICO did not necessarily know how or
 where free water would be used at the time it was diverted.
 However, EAU, through its expert, Bliss, also conceded that
 the Bowles Seep Canal and East Neres Canal were capable of,
 and in fact had been, delivering unappropriated seepage to
 shareholders from the Beebe Seep Canal. Bliss additionally
 conceded that FRICO's shareholders had a demonstrated
 need for additional water. Thus, there is ample evidence in
 the trial record that FRICO had been diverting a measurable,
 and accounted for, amount of unappropriated water in priority
 at the Bowles Seep Canal and East Neres Canal, which FRICO
 was thereafter putting to beneficial use.
 
 
          ¶72
 Thus, we conclude that the water court did not err in
 awarding FRICO the absolute portions of the East Neres Canal
 Seep Right and the Bowles Seep Canal Seep Right. Therefore,
 we affirm the water court's inclusion of this award in
 its Amended Decree.
 
 
          III.
 Conclusion
 
 
          ¶73
 For the above stated reasons, we conclude that the challenged
 limitations in the Amended Decree do not violate FRICO's
 constitutional and statutory right to
 
 37
 
 appropriate unappropriated water for beneficial use. We
 further conclude that the water court's factual findings
 concerning these limiting conditions and its award to FRICO
 of the challenged water rights are not clearly erroneous.
 Thus, we affirm the water court's Amended Decree.
 
 38
 
 ---------
 
 
 Notes:
 
 
 [1] Findings of Fact, Conclusions of Law,
 and Order, In re Farmers Reservoir & Irrigation
 Co., Civ. No. 02CW403 (D. Colo. Sept. 5, 2008)
 ("Case No. 02CW403"); Findings of Fact, Conclusions
 of Law, Judgment and Decree of the Water Court, In re
 Arapahoe Cnty. Water & Wastewater Auth., Civ. No.
 10CW306 (D. Colo. Apr. 2, 2014) ("Case No.
 10CW306").
 
 
 [2] The Beebe Draw is hydrologically
 connected to the South Platte River and encompasses Barr
 Lake, the Beebe Seep Canal, and Milton Lake.
 
 
 [3] The water court decreed 27.0 cubic
 feet per second ("cfs") for direct use of the
 Bowles Seep Canal Seep Right, of which 9.9 cfs is absolute
 and 17.1 cfs is conditional. For the East Neres Canal Seep
 Right, the water court decreed 43.0 cfs for direct use, of
 which 25.0 cfs is absolute and 18.0 cfs is
 conditional.
 
 
 [4] An absolute water right is one that is
 granted permanent status within the priority system once it
 has been appropriated and put to beneficial use. See
 Empire Lodge Homeowners' Ass'n v. Moyer, 39 P.3d
 1139, 1148 (Colo. 2001).
 
 
 [5] A paper fill is an accounting
 procedure that is used, for example, when water is stored
 under a junior water right before a senior water
 right has filled. See Colo. Div. of Water Res.,
 General Administration Guidelines for Reservoirs 1,
 13 (2011)
 https://dnrweblink.state.co.us/dwr/DocView.aspx?id=3579805&dbid=&cr=1
 [https://perma.cc/XM2P-E8XS]. This would require the
 reservoir to charge the amount stored against the senior
 water right and would count toward the senior water
 right's volumetric limit. Id.
 
 
 [6] An OTR account tracks water that is
 stored out of priority in a reservoir.
 
 
 [7] FRICO raises the following three
 issues on appeal:
 
 
 1. Whether the water court infringed on FRICO's
 constitutional and statutory right to appropriate
 unappropriated water by limiting Milton Lake to one annual
 fill from diversions under its existing 1909 Storage Right
 and the claimed new, junior Milton Lake Seep Right.
 
 
 2. Whether the water court infringed on FRICO's
 constitutional right to appropriate unappropriated water by
 requiring FRICO to account for all seepage inflow to Milton
 Lake as out of priority when there is water in FRICO's
 Milton Lake OTR account.
 
 
 3. Whether the water court lacked jurisdiction to
 require FRICO to account for transit losses on releases from
 Milton Lake for delivery to stockholders "for the
 purpose of quantifying the Subject Rights" even though
 the Subject Rights do not arise in or below Milton
 Lake.
 
 
 [8] EAU's cross-appeal raises one
 additional issue:
 
 
 Whether the facts that gave rise to the water rights
 granted to FRICO by the water court satisfied the definition
 of "appropriation" under section 37-92-103(3)(a),
 C.R.S. (2021), or whether the water court erred in awarding
 FRICO new water rights.
 
 
 [9] When operating under free river
 conditions "there is sufficient natural supply to
 satisfy all water uses, whether decreed or undecreed,"
 Empire Lodge, 39 P.3d at 1149 n.14, thereby
 potentially allowing additional water to become available for
 appropriation.
 
 
 [10] OOPSI is water used out of
 priority.
 
 
 ---------